[Nos. 41167-9-II; 41173-3-II.   Division Two.   October 8, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. DAYLAN ERIN BERG ET AL., *Appellants*.

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY S. REED, *Appellant*.

*Casey Grannis* (of *Nielsen Broman & Koch PLLC*) and *Catherine E. Glinski*, for appellants.

*Anthony F. Golik, Prosecuting Attorney*, and *Abigail E. Bartlett* and *Rachael Rogers Probstfeld, Deputies*, for respondent.

¶1  WORSWICK, C.J. — After a jury trial, Daylan Berg and Jeffrey Reed were each convicted of five counts: attempted first degree murder, first degree burglary, first degree kidnapping, first degree robbery, and intimidating a witness.[1] In special verdicts, the jury found that Berg and Reed committed each of the five counts while armed with a firearm and that the attempted murder was of a police officer performing his official duties. Berg and Reed appeal their convictions, arguing that (1) the exclusion of an observer from the courtroom violated their public trial rights and was erroneous as a matter of courtroom operations and (2) insufficient evidence supports their kidnapping convictions. We hold that because no courtroom closure occurred, the trial court did not violate Berg's and Reed's public trial rights and further hold that any courtroom operations error was harmless. In addition, because we follow our decision in *State v. Korum*, 120 Wn. App. 686, 86 P.3d 166 (2004), *aff'd in part and rev'd in part on other grounds*, 157 Wn.2d 614, 141 P.3d 13 (2006), we vacate the kidnapping convictions for insufficient evidence.

¶2  In the unpublished portion of this opinion, we address Berg's and Reed's other contentions: (1) Berg and Reed argue that the State committed prosecutorial misconduct by making improper remarks during closing argument and their counsel were ineffective for failing to object to these remarks, (2) Berg argues that insufficient evidence sup-

---

[1] Reed was also convicted of first degree unlawful possession of a firearm.

ports his conviction for witness intimidation, (3) Berg and Reed argue that the special verdict instructions violated their right to a unanimous verdict, (4) Reed argues that a witness's opinion on Reed's state of mind violated his right to a jury trial, and (5) Reed argues that cumulative error warrants reversal of his convictions. In a pro se statement of additional grounds, Reed further argues (1) evidentiary error, (2) additional improper remarks in closing argument, (3) instructional error, (4) additional ineffective assistance of counsel, and (5) erroneous denial of motions for mistrial. Aside from the insufficiency of the kidnapping evidence, we reject Berg's and Reed's arguments. We affirm Berg's and Reed's convictions, except that we remand to the trial court to vacate Berg's and Reed's first degree kidnapping convictions and to resentence them accordingly.

## FACTS

A. *Substantive Facts*

¶3 Albert Watts was an authorized medical marijuana user who lived in a rented house in Vancouver, Washington. Berg and Reed learned that Watts grew marijuana in a workshop located in a walled-off portion of his garage.

¶4 One evening, Watts was alone in the workshop tending to the marijuana plants when Berg and Reed kicked in the door. Holding a handgun, Reed ordered Watts to the ground. Berg took the gun and pinned Watts to the floor, threatening to shoot him if he moved. Reed then went inside the house and took Watts's cell phone and wallet. Reed then loaded the marijuana plants into a white car.

¶5 When Reed finished loading the car, he returned to the workshop. Berg stopped pinning Watts to the floor, and Reed asked whether Watts would call the police. Watts answered that he would tell the police "nothing." 24 Verbatim Report of Proceedings (VRP) at 1000.

¶6 After Reed told Watts to remain on the floor for 15 minutes, Berg and Reed left. Three or 4 minutes after they

left, Watts stood up and walked inside his house. Later, during Berg and Reed's flight from the scene, Berg shot a police officer, Sergeant Jay Alie.

B. *Procedural Facts*

¶7 The State charged Berg and Reed with five counts each: attempted first degree murder, first degree burglary, first degree kidnapping, first degree robbery, and intimidating a witness. The State sought firearm enhancements for all five counts and also charged an aggravating factor on the attempted first degree murder count, based on Sergeant Alie's status as a police officer. In addition, the State charged Reed with first degree unlawful possession of a firearm.

¶8 During the trial, the trial court allowed undercover officers from the Vancouver Police Department to be present in the courtroom to augment the security provided by uniformed officers from the Clark County Sheriff's Office. Joel Wyman, a friend of Berg and Reed's, observed the beginning of trial from the courtroom gallery. During a recess on the third day of trial, a sheriff's custody officer asked Wyman to leave the courtroom, and a Vancouver police detective questioned him on suspicion of intimidating a witness during a trial held the previous week. After the questioning ended, a courthouse security officer informed Wyman that "he was being trespassed from the trial, but could return to the Courthouse if he had other business to attend to." Clerk's Papers (CP) (Reed) at 471.

¶9 The trial court had not authorized any officers to exclude Wyman from the courtroom and did not learn of Wyman's exclusion until Berg objected to it. The trial court denied the objection and Berg's subsequent motion for a mistrial, explaining that it had excluded no one from the courtroom and that Wyman was free to return. Further, the trial court entered an order stating that no one should be excluded from the courtroom absent good cause. However, Wyman did not return to observe the trial because he feared arrest.

¶10  Berg and Reed appeal their convictions.

## ANALYSIS

### I. EXCLUSION OF A COURTROOM OBSERVER

¶11  Berg and Reed argue that their convictions should be reversed because the exclusion of a courtroom observer, their friend Wyman, was a courtroom closure that violated their constitutional rights to a public trial. We disagree that Wyman's exclusion constituted a courtroom closure. Berg further argues that reversal is warranted because the exclusion of Wyman amounted to a usurpation of the trial court's authority over courtroom operations. We disagree that reversal is warranted because any error in courtroom operations was harmless.

### A. *Public Trial Rights*

¶12  Berg and Reed argue that their constitutional rights to a public trial were violated when police officers excluded Wyman from the courtroom during their trial. We disagree because the exclusion of a single person is not a courtroom closure.

¶13  Both the United States Constitution and the Washington Constitution protect (1) a criminal defendant's right to a public trial, U.S. CONST. amend. VI; WASH. CONST. art. I, § 22, and (2) the public's right to the open administration of justice, U.S. CONST. amend. I; WASH. CONST. art. I, § 10. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). A trial court violates these rights if it closes the courtroom during a public proceeding, unless the trial court had previously determined that closure is warranted under the five-part test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).[2] *Wise*, 176 Wn.2d at 12.

---

[2] The five criteria are:

1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an

¶14 Whether a courtroom closure violates a defendant's right to a public trial or the public's right to the open administration of justice is a question of law reviewed de novo. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009). Whether a courtroom closure in fact occurred also is a question reviewed de novo. *See Wise*, 176 Wn.2d at 12; *State v. Lormor*, 172 Wn.2d 85, 92-93, 257 P.3d 624 (2011).

¶15 Our Supreme Court recently decided that the exclusion of only one person from an otherwise open courtroom does not constitute a closure.[3] *Lormor*, 172 Wn.2d at 93. Instead, the closure of a trial or similar proceeding "occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *Lormor*, 172 Wn.2d at 93.

¶16 Under *Lormor*, Wyman's exclusion was not a courtroom closure. *See* 172 Wn.2d at 92-93. Although police detained Wyman outside the courtroom while questioning him on suspicion that he had committed a crime, Wyman was the only person excluded and the courtroom remained open. And despite what the security officer told Wyman, the trial court stated that Wyman was allowed to return to observe the trial. Because no courtroom closure occurred,

accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interests of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose.

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[3] In *Presley v. Georgia*, 558 U.S. 209, 209-10, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010), the United States Supreme Court held that a closure occurred when the trial court excluded a single observer from the courtroom—but he was the *only* observer present. Interpreting *Presley* and *Waller v. Georgia*, 467 U.S. 39, 47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), our Supreme Court decided that in the context of a trial, a closure occurs when the trial takes place in a courtroom that is "closed to *all* potential spectators." *Lormor*, 172 Wn.2d at 91-92.

the trial court did not violate Berg's and Reed's right to a public trial or the public's right to the open administration of justice.[4] *Wise*, 176 Wn.2d at 12. Berg and Reed's public trial argument fails.

## B. *Courtroom Operations*

■ ¶17  Relying on *Lormor*, 172 Wn.2d at 93, Berg also argues that even if no courtroom closure occurred, reversal is warranted because the officer who excluded Wyman also usurped the trial court's inherent power to preserve and enforce order in the courtroom.[5] We disagree that reversal is warranted.

### 1. *Improper Exclusion*

■■ ¶18  When public trial rights are not implicated, we analyze the exclusion of a person from a courtroom as a matter of courtroom operations. *Lormor*, 172 Wn.2d at 93. Trial courts possess broad inherent power and statutory authority over courtroom operations. *Lormor*, 172 Wn.2d at 93-94.

¶19  We review matters of courtroom operations for an abuse of discretion. *Lormor*, 172 Wn.2d at 94. A trial court

---

[4] To support their argument that their Sixth Amendment right to a public trial was violated by the exclusion of Wyman alone, Berg and Reed cite numerous cases from other states and the federal courts of appeals. But we are bound to follow decisions of the Washington Supreme Court and, where federal law is concerned, the United States Supreme Court. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 590, 146 P.3d 423 (2006); *Sims v. Georgia*, 385 U.S. 538, 544, 87 S. Ct. 639, 17 L. Ed. 2d 593 (1967). In contrast, "a vast majority" of the state supreme courts that have considered the issue have decided they are not bound by decisions of the inferior federal courts on questions of federal law or constitutional interpretation. *Hall v. Pa. Bd. of Probation & Parole*, 578 Pa. 245, 851 A.2d 859, 863-64 (2004) (collecting cases, but none from Washington); *see Strange v. Spokane County*, 171 Wn. App. 585, 593, 287 P.3d 710 (2012) (decisions of the federal courts of appeals are persuasive authority), *review denied*, 177 Wn.2d 1016 (2013).

[5] Our Supreme Court decided *Lormor* after Berg and Reed filed their opening briefs but before the State filed its responsive brief. Thus, Berg makes this argument for the first time in reply but after the State argued *Lormor*. Ordinarily, we do not consider arguments raised for the first time in a reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). But the ends of justice require us to do so here. RAP 1.2(c).

abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). When a decision is within a trial court's discretion but the trial court fails to exercise discretion at all, the trial court abuses its discretion. *State v. Flieger*, 91 Wn. App. 236, 242, 955 P.2d 872 (1998).

¶20 Here, the trial court did not exclude Wyman from the courtroom. To the contrary, upon learning that Wyman had been excluded, the trial court entered an "Order on Public Access to the Courtroom" stating that Berg and Reed had "an undisputed right to have the public present during trial" and that no courtroom observer should be excluded from the courtroom absent good cause or the court's permission. CP (Reed) at 186-87.

¶21 However, police officers removed Wyman from the courtroom, detained him elsewhere, and barred his return to the courtroom during the trial—all without the trial court's knowledge or authority. During a recess, a custody officer asked Wyman to step out of the courtroom. In the hallway, Detective Darren McShea of the Vancouver police asked to question Wyman about his conduct as a courtroom observer during another trial held the previous week. "With some prompting," Wyman agreed to discuss the matter in a nearby conference room. CP (Reed) at 471. During the questioning, "Wyman twice asked if he was free to leave," but Detective McShea said Wyman "was being detained for investigation." CP (Reed) at 471. Detective McShea then told Wyman that "his conduct the previous week had not gone unnoticed and that continued behavior of that nature could subject him to arrest for intimidating witnesses." CP (Reed) at 471. Wyman denied knowing what Detective McShea meant. CP (Reed) at 471. After the questioning, a courthouse security officer informed Wyman that "he was being trespassed from [Berg and Reed's] trial, but could return to the Courthouse if he had other business to attend to." CP (Reed) at 471. Despite the trial court's order affirm-

ing the public's right to observe the trial, Wyman did not return for fear of arrest.

¶22 The trial court rightly called these events "troubling." 35 VRP at 2480. By purporting to ban Wyman from returning to the courtroom to observe the trial, the Vancouver police officers and Clark County sheriff's deputies usurped the trial court's authority over courtroom operations.[6] In effect, they nullified the exercise of the trial court's discretion. That is improper and, as a matter of courtroom operations, erroneous.

### 2. *Harmless Error*

¶23 Berg contends that reversal of his convictions is required for an error of courtroom operations. We disagree because the error was harmless.

¶24 We review matters of courtroom operations in the same manner that we review a trial court's evidentiary rulings. *Lormor*, 172 Wn.2d at 94-95. Thus, an error of courtroom operations is harmless unless it is prejudicial. *See State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). An error is prejudicial only if the trial's outcome would have been materially affected had the error not occurred. *Cunningham*, 93 Wn.2d at 831.

¶25 Here, there was no prejudice. Wyman's exclusion occurred during a recess, outside of the jury's presence. Nothing in the record shows that Wyman's attendance or absence had any effect on the trial's outcome.

¶26 Arguing to the contrary, Berg contends that the trial court's order on public access came too late because "[t]he damage was already done": six witnesses testified in Wyman's absence before the order was entered. Reply Br. of Appellant (Berg) at 11. But Berg does not show that the trial's outcome was materially affected by Wyman's exclu-

---

[6] We do not doubt that police may lawfully detain individuals to investigate crimes. But we are aware of no authority allowing police to ban an individual from attending a particular trial after a lawful detention has ended.

130

sion. Therefore, the error of courtroom operations was harmless, and reversal is unwarranted. *Cunningham*, 93 Wn.2d at 831.

## II. Sufficiency of the Evidence

¶27 Berg and Reed next argue that insufficient evidence supports their convictions for one count each of first degree kidnapping. We agree that the evidence is insufficient to support their first degree kidnapping convictions.

¶28 Due process requires that to obtain a criminal conviction, the State must prove every element of the charged offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980); *see In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When a defendant challenges the sufficiency of the evidence supporting his conviction, we examine the record to decide whether any rational trier of fact could have found that the State met its burden to obtain the conviction. *Green*, 94 Wn.2d at 221-22 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). We consider the evidence and all reasonable inferences from it in the light most favorable to the State. *State v. McPhee*, 156 Wn. App. 44, 62, 230 P.3d 284, *review denied*, 169 Wn.2d 1028 (2010).

¶29 Relying on the incidental restraint doctrine applied in *Korum*, 120 Wn. App. 686, Berg and Reed argue that the evidence is insufficient to convict them of first degree kidnapping. We note that Division One of this court has declined to follow *Korum*, calling it "wrongly decided." *State v. Phuong*, 174 Wn. App. 494, 508, 299 P.3d 37 (2013), *petition for review filed*, No. 88889-2 (Wash. May 31, 2013); *State v. Grant*, 172 Wn. App. 496, 498, 301 P.3d 459 (2012), *review denied*, 177 Wn.2d 1021 (2013). Similarly, Division Three has limited *Korum* to cases where the

prosecutor has acted vindictively or overcharged the defendants. *State v. Butler*, 165 Wn. App. 820, 830-31, 269 P.3d 315 (2012). We adhere to *Korum*, and we vacate Berg's and Reed's convictions for first degree kidnapping. Respectfully, we disagree with Divisions One and Three.

## A. Korum *and the Incidental Restraint Doctrine*

¶30 The parties dispute whether the incidental restraint doctrine we applied in *Korum*, 120 Wn. App. 686, is required by our Supreme Court's decision in *Green*, 94 Wn.2d 216. Likewise, the split within the Court of Appeals over the vitality of the incidental restraint doctrine is, in reality, a dispute about the meaning of *Green*.[7] Consistent with our decision in *Korum*, we now hold that *Green* requires application of the incidental restraint doctrine in this challenge to the sufficiency of the evidence of first degree kidnapping.

### 1. *The Incidental Restraint Doctrine Is Required by* Green

¶31 A person commits first degree kidnapping "if he or she intentionally abducts another person with intent . . . [t]o facilitate commission of any felony or flight thereafter." RCW 9A.40.020(1)(b).[8] The critical element of abduction can take three forms, all of which necessarily involve restraint: (1) restraint by secreting the victim in a place where he or she is not likely to be found, (2) restraint by threats of deadly force, or (3) restraint by the use of deadly force. *Green*, 94 Wn.2d at 225; *see* RCW 9A.40.010(1). A "restraint" is defined as a restriction on a person's movements that is without the person's consent, is without legal

---

[7] We have previously explained that "[a]lthough *Green* borrowed the 'incidental restraint' concept from an earlier merger case, it incorporated this concept into a new standard for determining sufficiency of evidence on appeal." *In re Pers. Restraint of Bybee*, 142 Wn. App. 260, 266-67, 175 P.3d 589 (2007) (footnote omitted). According to Division One, "*Green* did no such thing." *Grant*, 172 Wn. App. at 505.

[8] The legislature added gender-neutral language to RCW 9A.40.020 in 2011. Laws of 2011, ch. 336, § 364.

authority, and interferes substantially with the person's liberty. RCW 9A.40.010(6).[9]

¶32 In *Green*, our Supreme Court held that when the State presents only evidence of conduct that was merely incidental to the commission of another crime, no rational trier of fact could find that the evidence proves beyond a reasonable doubt that the conduct was a restraint. *Green*, 94 Wn.2d at 227, 229-30. That is the incidental restraint doctrine.

¶33 Given the incidental restraint doctrine, the killing of a murder victim "does not, in and of itself, establish kidnapping" because the act of killing does not prove a restraint. *Green*, 94 Wn.2d at 228. Thus the *Green* court held that a murderer did not also commit a kidnapping by killing his victim.[10] *Green*, 94 Wn.2d at 229.

¶34 The outcome in *Green* depended on a narrow interpretation of the word "restraint" in the kidnapping statute. *Green* explained,

> In the broadest sense the infliction of a fatal wound is the ultimate form of "restraint" because it obviously "restrict[s] a person's movement . . . in a manner which interferes substantially with [the person's] liberty." RCW 9A.40.010(1). If such logic is applied to the law of kidnapping, however, *every* intentional killing would also be a kidnapping because the killing itself would supply the requisite "restraint" (*i.e.*, the killing being the ultimate form of "restraint").

*Green*, 94 Wn.2d at 229 (alterations in original).

¶35 Applying this narrow interpretation of "restraint," the *Green* court analyzed the sufficiency of the evidence of kidnapping by examining each of the three recognized

---

[9] In 2011, the legislature further amended RCW 9A.40.010 to define terms related to human trafficking. Laws of 2011, ch. 111, § 2. The amendments do not affect our analysis.

[10] We disagree with the State's contention that the incidental restraint doctrine effectively adds a nonstatutory element to the definition of kidnapping. Instead, the incidental restraint doctrine derives from a narrow interpretation of the statutory element of restraint.

forms of abduction: (1) restraint by secreting the victim, (2) restraint by threats of deadly force, and (3) restraint by use of deadly force other than the killing itself.[11] *Green*, 94 Wn.2d at 225-28. The evidence was insufficient to prove any of the three forms of abduction. *Green*, 94 Wn.2d at 228.

¶36 In holding that the evidence failed to show restraint by secretion, the *Green* court decided that proof was lacking of *both* restraint *and* secretion. The evidence showed no secretion because the murderer "could hardly have chosen a more public place to accost his victim or commit the homicide some 2 to 3 minutes later." *Green*, 94 Wn.2d at 226. Further, the evidence showed no restraint because

> although [the murderer] lifted and moved the victim [approximately 20 to 50 feet], it is clear these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping.

*Green*, 94 Wn.2d at 226-27.

¶37 The State argues that the foregoing passage was dictum because the *Green* court "had already found there was no evidence of the element of restraint." Suppl. Br. of Resp't at 4. We disagree. A statement in an opinion is dictum if it is unrelated to the issues before the court and unnecessary to decide the case. *State v. Potter*, 68 Wn. App. 134, 149 n.7, 842 P.2d 481 (1992). But in this passage the *Green* court explained *why* there was no evidence of restraint despite the murderer's forcible movement of the victim. Thus this passage was necessary to *Green*'s decision, and it is not dictum.

¶38 Next, with a terse analysis, the *Green* court decided that the evidence was also insufficient to prove restraint by

---

[11] The *Green* court framed the State's argument as inviting the court to recognize a fourth form of abduction: restraint by use of deadly force *including* the killing itself. *Green* refused this invitation. 94 Wn.2d at 228-29.

threats of deadly force or restraint by use of deadly force other than the killing itself. First, there was no restraint by threats of deadly force because the record contained no evidence of any threats. *Green*, 94 Wn.2d at 228. Likewise, there was no evidence of any use of deadly force other than the killing itself. *Green*, 94 Wn.2d at 228. Therefore *Green* held the evidence insufficient to prove any of the three forms of abduction. *Green*, 94 Wn.2d at 230.

¶39 In *Korum*, we applied the holdings of *Green* and vacated a defendant's kidnapping convictions for insufficient evidence where the only evidence of restraint was conduct incidental to a series of home invasion robberies. *Korum*, 120 Wn. App. at 707, 719. Although our Supreme Court reversed on other grounds, it declined to reach the incidental restraint issue because the State had inadequately briefed it. *Korum*, 157 Wn.2d at 625, 652-53. We now hold that *Korum*'s application of the incidental restraint doctrine was required by *Green*.

### 2. *Reasons for Rejecting the Incidental Restraint Doctrine*

¶40 Rejecting *Korum*'s application of the incidental restraint doctrine, Divisions One and Three have reasoned that (1) *Green* involved a charge of aggravated first degree murder, not kidnapping, (2) *Green*'s entire discussion of incidental restraint was dicta, and (3) the incidental restraint doctrine is inappropriate absent evidence of prosecutorial vindictiveness and overcharging. We address each reason in turn.

¶41 First, the charge in *Green* was aggravated first degree murder; the murder was aggravated if the killing occurred in the course of or in the furtherance of a kidnapping. *Green*, 94 Wn.2d at 219, 229. Emphasizing the importance of the aggravated first degree murder charge, Division One has confined *Green*'s holding to the "crime within a crime" context. *Phuong*, 174 Wn. App. at 520. But this confinement contradicts *Green*'s statement of the issue it decided: whether the State had proved the elements of

"kidnapping [as defined in ]RCW 9A.40.020." 94 Wn.2d at 219; *see also* 94 Wn.2d at 224-25. Nothing in *Green* suggests that the elements of kidnapping vary according to whether it is the charged offense or a crime within a crime.

¶42 Second, Division One has concluded that *Green*'s entire discussion of the incidental restraint doctrine was dicta addressing merger—a double jeopardy issue—*not* the due process requirement that the evidence must be sufficient to prove each element beyond a reasonable doubt. *Phuong*, 174 Wn. App. at 517, 521 n.21. In support of this conclusion, Division One examined the majority and dissenting opinions in three cases: *Green*, 94 Wn.2d 216, an earlier decision referred to as *"Green I"* (*State v. Green*, 91 Wn.2d 431, 588 P.2d 1370 (1979)), and *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979). *Phuong*, 174 Wn. App. at 514-21.

¶43 We disagree with Division One because *Green*'s discussion was clearly not dicta; rather, it is necessary to *Green*'s result. But for *Green*'s holding that evidence of conduct incidental to a murder is not sufficient to prove the restraint element of kidnapping, *Green* would have decided that the murderer committed a kidnapping when he restrained his victim by killing her.

¶44 Nonetheless, we admit that Division One's conclusion has doctrinal appeal, in that it preserves distinctions between sufficiency of the evidence and merger. Yet our Supreme Court's decision on an issue of state law remains binding on us until our Supreme Court overrules it. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). As Judge Becker noted in dissent from Division One's rejection of the incidental restraint doctrine, "[Our] Supreme Court's most recent reference to the [incidental restraint] issue expressly affirms the continuing vitality of *Green*."[12] *Grant*, 172 Wn. App. at 511.

---

[12] In *State v. Brett*, 126 Wn.2d 136, 166, 892 P.2d 29 (1995), our Supreme Court cited *Green* and wrote, "This court has held and the State concedes that the mere incidental restraint and movement of the victim during the course of another

¶45 Third, Division Three has suggested that the incidental restraint doctrine applies only where, as in *Korum*, the court believes that prosecutorial vindictiveness has led to overcharging. *Butler*, 165 Wn. App. at 831. *Korum* applied the incidental restraint doctrine set forth in *Green*, but *Green* says nothing about prosecutorial vindictiveness or overcharging. *Butler* does not address *Green*'s discussion of incidental restraint.

¶46 We respectfully disagree with the courts that have rejected *Korum*. Accordingly, we follow *Korum* and apply the incidental restraint doctrine here.

B. *The Evidence Is Insufficient To Prove Kidnapping*

¶47 As stated above, abduction is an element of first degree kidnapping. RCW 9A.40.020(1). Abduction can take three forms, all of which necessarily involve restraint: (1) restraint by secreting the victim in a place where he or she is not likely to be found, (2) restraint by threats of deadly force, or (3) restraint by the use of deadly force. *Green*, 94 Wn.2d at 225; *see* RCW 9A.40.010(1). When the State presents only evidence of conduct that was merely incidental to the commission of another crime, no rational trier of fact could find that the evidence proves beyond a reasonable doubt that the conduct was a restraint. *Green*, 94 Wn.2d at 229-30.

¶48 Whether a restraint was incidental to the commission of another crime is a fact-specific determination. *State v. Elmore*, 154 Wn. App. 885, 901, 228 P.3d 760, *review denied*, 169 Wn.2d 1018 (2010). As a matter of law, a restraint was incidental to the commission of a home invasion robbery when (1) facilitating the robbery was the restraint's sole purpose, (2) the restraint was inherent in the robbery, (3) the robbery victims were not transported from their home to a place where they were not likely to be found, (4) the restraint did not last substantially longer

crime which has no independent purpose or injury is insufficient to establish a kidnapping."

than necessary to complete the robbery, and (5) the restraint did not create a significant independent danger. *Korum*, 120 Wn. App. at 707; *see State v. Lindsay*, 171 Wn. App. 808, 843, 288 P.3d 641 (2012) (merger case citing *Korum*), *review granted on other grounds*, 177 Wn.2d 1023 (2013). In all five of these respects, this case is indistinguishable from *Korum*.

¶49 Arguing to the contrary, the State contends that this case is distinguishable from *Korum* and *Green* in three ways. First, the State asserts that Berg and Reed did not restrain Watts in his workshop to facilitate the robbery, but instead to prevent others from helping Watts during the robbery. But nothing in the record supports this assertion; moreover, preventing a robbery victim from obtaining help would facilitate the robbery.

¶50 Second, the State contends that Berg and Reed restrained Watts for substantially longer than necessary because as they fled they told Watts to remain on the floor for 15 minutes. But this is no different from *Korum*, where the robbers fled the scene with some of their victims' hands tied and those victims loosened their restraints after about 5 minutes. 120 Wn. App. at 707 & n.19. Similarly, Watts testified that he stood up and went inside his house 3 or 4 minutes after Berg and Reed left.

¶51 Third, the State argues that Berg and Reed secreted Watts inside his workshop where he was unlikely to be found but there was no secretion in *Green* because the murder occurred in a semipublic place. But the State fails to explain or support its assertion that "[s]ecreting Watts was unnecessary in order to commit robbery." Br. of Resp't at 40. Therefore we do not consider it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

¶52 Citing *State v. Allen*, 94 Wn.2d 860, 621 P.2d 143 (1980), the State further contends that Berg and Reed kidnapped Watts by restraining him by threat or use of deadly force while they fled the scene of their robbery. But

*Allen* is distinguishable. In *Allen,* two robbers restrained a convenience store clerk at gunpoint inside their car while one of them brought the cash register drawer from the store to the car. 94 Wn.2d at 861. The robbers then drove two blocks away before forcing the clerk out of the car. *Allen,* 94 Wn.2d at 861. Our Supreme Court held that the kidnapping and robbery did not merge because restraining the clerk inside the fleeing car was not incidental to the robbery. *Allen,* 94 Wn.2d at 864. Here, the merger doctrine is not at issue. Further, like the robbers in *Korum,* 120 Wn. App. at 707, Berg and Reed fled *without* their robbery victim. The State's contention is unpersuasive.

¶53 Because the State's only evidence of kidnapping was conduct that was merely incidental to the robbery, the evidence is not sufficient under *Green* and *Korum* to support Berg's and Reed's convictions for first degree kidnapping. Therefore we vacate these convictions.

¶54 In the unpublished portion of this opinion, we consider Berg's and Reed's remaining arguments. We reverse Berg's and Reed's first degree kidnapping convictions but affirm all other convictions, and we remand to the trial court to vacate Berg's and Reed's first degree kidnapping convictions and to resentence them accordingly.

¶55 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J., and TOLLEFSON, J. PRO TEM., concur.

Berg's petition for review denied and the State's petition for review granted at 179 Wn.2d 1028 (2014).