# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE NOV 1 3 2014

Madsen, C.J.
CHIEF JUSTICE



This opinion was filed for record
at 8:00 Am on Nov. 13, 2014

for Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89570-8 |
| Respondent, | ) | |
| v. | ) | |
| DAYLAN ERIN BERG, | ) | |
| Petitioner. | ) | |
| STATE OF WASHINGTON, | ) | En Banc |
| Respondent, | ) | |
| v. | ) | |
| JEFFREY S. REED, | ) | |
| Petitioner. | ) | Filed NOV 1 3 2014 |

MADSEN, C.J.—We consider whether there is sufficient evidence to support a kidnapping charge if the conduct constituting kidnapping is incidental to a separately charged crime of robbery. Defendants Daylan Berg and Jeffrey Reed were convicted of robbery in the first degree and kidnapping in the first degree in violation of RCW 9A.56.200 and RCW 9A.40.020. On appeal, Division Two of the Court of Appeals held that because the only evidence of kidnapping was conduct incidental to the robbery, the

evidence of kidnapping was insufficient under the due process clause. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. Accordingly, the Court of Appeals vacated the kidnapping convictions. Consistent with this court's decision in *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980) (*Green* II), we hold that when kidnapping and robbery are charged separately, whether the kidnapping activity is incidental to the robbery is immaterial to the sufficiency of the evidence of kidnapping. We reverse the Court of Appeals and reinstate the kidnapping convictions.

## FACTS AND PROCEDURE

At the time of the incident, the victim, Albert M. Watts, resided in Vancouver, Washington, and held a medical marijuana card that permitted him to legally grow marijuana plants. The State's evidence showed that on the evening of April 15, 2009, Daylan Berg and Jeffrey Reed broke into the back door of Watts's garage while Watts was watering his marijuana plants. Reed held a semiautomatic pistol to Watts's head and ordered him to get on the ground. Watts complied. Responding to Reed's instructions, Berg held down Watts with his knee while pointing the gun at his head. While Berg restrained Watts, Reed went back and forth between the garage and the house, at some point taking Watts's wallet and phone and ripping up his marijuana plants.

During the course of the robbery, Watts was pinned to the ground for approximately 30 minutes. Whenever Watts tried to move beneath Berg's knee, Berg threatened that they would kill him. Before leaving the premises, Berg and Reed promised to find and kill Watts if he talked to police about what had transpired. They

also told him to remain on the floor for an additional 15 minutes after they left. Watts

stayed on the floor for just a few minutes, then got up and eventually connected with

police who were already at the scene outside. Later, as Berg and Reed were trying to

escape, Sargent Jay Alie pulled them over and Berg shot the police officer in the chest.

Based on this conduct, the State charged Berg and Reed with five separate counts:

attempted murder in the first degree (based on the shooting of Sargent Alie), burglary in

the first degree, kidnapping in the first degree, robbery in the first degree, and

intimidating a witness. Reed was also charged with unlawful possession of a firearm in

the first degree. The two cases were consolidated for trial in Clark County Superior

Court, and the jury convicted Berg and Reed on all counts. The court imposed an

exceptional sentence of 500 months for the attempted murder count and 748 months of

total confinement for both Berg and Reed.

On appeal to Division Two of the Court of Appeals, Berg and Reed contended,

among other things, that the trial court did not have sufficient evidence to convict them of

kidnapping because the kidnapping conduct was merely incidental to the robbery.[1] *State

v. Berg*, 177 Wn. App. 119, 136-38, 310 P.3d 866 (2013) (partially published). The

Court of Appeals credited the defendants' argument and held that the trial court lacked

sufficient evidence to convict Berg and Reed of kidnapping, citing this court's decision in

*Green* II as controlling. The Court of Appeals relied on its prior decision in *State v.*

---

[1] Defendants also alleged a public trial right violation, prosecutorial misconduct, ineffective assistance of counsel, insufficient evidence of witness intimidation, a divided jury verdict, error in rejecting Reed's motion for mistrial, and cumulative error. *State v. Berg*, 177 Wn. App. 119, 122-23, 310 P.3d 866 (2013). The Court of Appeals rejected all of these arguments, and this court declined further review. *Id.* at 123.

*Korum*, 120 Wn. App. 686, 702-03, 86 P.3d 166 (2004), which had interpreted *Green* II

to create a due process standard that evidence of kidnapping is insufficient where the

kidnapping is incidental to another crime.

All parties petitioned this court, and we accepted review of the State's petition on

March 6, 2014.[2]

## DISCUSSION

This case presents the question of whether *Green* created a new due process

standard that evidence of kidnapping is insufficient to prove kidnapping where the

conduct is merely incidental to another crime. The sufficiency challenge here arises in

the context of robbery and kidnapping charges. Accordingly, it is useful to review the

elements and the statutory framework for these crimes.

"Robbery" is defined as the unlawful taking of personal property from the person

of another or in his or her presence, against his or her will, by the use or threatened use of

force, violence, or fear of injury to any person or property. RCW 9A.56.190. If the State

proves these basic elements, the defendant may be convicted of robbery in the second

degree. RCW 9A.56.210. If, however, the State also proves one of the additional

elements outlined in RCW 9A.56.200, the defendant's conviction may be elevated to

robbery in the first degree. In this case, Reed and Berg were convicted of robbery in the

first degree because the jury found the State had proved one of these additional elements,

namely that "in the commission of a robbery or of immediate flight therefrom" they

---

[2] Berg and Reed also filed petitions for review, but this court denied both. Though only the
State's petition was accepted for review, the State is identified as the respondent pursuant to a
letter of the court dated November 22, 2013.

"[d]isplay[ed] what appear[ed] to be a firearm or other deadly weapon." RCW 9A.56.200(1)(a)(ii).

"Kidnapping" is defined as the intentional abduction of another person. RCW 9A.40.030. Abduction can be shown by proving either restraint by secretion or restraint by use or threat of deadly force. RCW 9A.40.010(1). "Restraint" is defined as a restriction of a person's movement without his or her consent and without legal authority, in a manner substantially interfering with that person's liberty. RCW 9A.40.010(6). Kidnapping in the first degree is established by proof of these basic elements plus proof that the defendant kidnapped with the intent to engage in one of five enumerated actions. RCW 9A.40.020. Here, Berg and Reed were convicted of first degree kidnapping because the jury found they intentionally abducted another person with the intent "[t]o facilitate commission of any felony or flight thereafter." RCW 9A.40.020(1)(b).

The defendants argued, and Division Two agreed, that the jury had insufficient evidence to convict them of kidnapping because their kidnapping conduct was merely incidental to the robbery of Watts. Though sufficiency of the evidence cases have borrowed the terminology, the analysis of whether one crime is incidental to another crime originated as a concern in the context of merger. In order to clarify and distinguish our sufficiency jurisprudence, a brief discussion of merger concepts is useful.

"Merger" is a "doctrine of statutory interpretation used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions." *State v. Vladovic*, 99 Wn.2d 413, 419 n.2, 662 P.2d 853

(1983). The judiciary has developed the merger doctrine over time as an extension of double jeopardy principles. U.S. CONST. amend. V. The double jeopardy clause protects against double prosecution and multiple punishments for the same offense. *State v. Johnson*, 92 Wn.2d 671, 678-80, 600 P.2d 1249 (1979) (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)), *disapproved on other grounds by State v. Sweet*, 138 Wn.2d 466, 478-79, 980 P.2d 1223 (1999). Because the legislature has the power to define criminal conduct and assign requisite punishment, "the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors." *Brown*, 432 U.S. at 165. Accordingly, whether a conviction offends the double jeopardy clause typically depends on the language of the relevant statute and legislative intent to permit or disallow multiple punishments for the criminal conduct at issue. *State v. Louis*, 155 Wn.2d 563, 568-69, 120 P.3d 936 (2005). The merger doctrine aids courts in assessing this legislative intent where a defendant's conduct meets the definition of more than one statutory provision. It represents an "'aversion to prosecuting a defendant . . . based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them.'" *State v. Green*, 91 Wn.2d 431, 458-59, 588 P.2d 1370 (1979) (*Green* I) (Utter, J. dissenting) (quoting *People v. Cassidy*, 40 N.Y.2d 763, 765-67, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976)).

In *Johnson*, this court held that the legislature intended kidnapping charges to merge into rape charges where the kidnap elevated the seriousness level of rape. 92 Wn.2d at 675-76. The *Johnson* court arrived at this decision through a careful dissection of the statute for rape in the first degree, which provided that the prosecutor prove "not only that the defendant committed rape, but that the rape was accompanied by an act which is defined as a separate crime elsewhere in the criminal statutes." *Id.* at 675 (citing former RCW 9.79.170 (1979), *recodified as* RCW 9A.44.040). The court concluded that "the legislature intended that punishment for first-degree rape should suffice as punishment for crimes proven in aid of the conviction, which are *incidental to* and elements of the central crime." *Id.* at 678 (emphasis added). Because the evidence there showed the sole purpose of the kidnapping was to compel the victim's submission to rape, the court concluded the crimes merged.

We outlined the general rule for merger in a later case, *Vladovic*. There we explained that

> the merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping).

99 Wn.2d at 420-21. Then, we described an exception to this rule. Where two offenses would otherwise merge but have "independent purposes or effects," separate punishment may be applied. *Id.* at 421 (citing *Johnson*, 92 Wn.2d at 680). Essentially, the merger doctrine states that where crime A and crime B are charged separately and completion of

crime A is also an element of crime B, crime A will definitely merge into crime B if crime A was incidental to the commission of crime B. If crime A was not incidental but rather had an independent purpose, it falls within the described exception and courts may impose separate punishment. Thus, the incidental nature of the crime is relevant to the application of an exception to the general merger doctrine.[3]

In *Vladovic*, the court held that kidnapping cannot merge into robbery, but it did imply that robbery could merge into kidnapping because "[t]he first degree kidnapping statute applicable in this case specifically requires proof of another felony in order to elevate the crime to first degree kidnapping." *Id.* Later, the court revised that statement in *In re Personal Restraint of Fletcher*, 113 Wn.2d 42, 52-53, 776 P.2d 114 (1989), reasoning that the kidnapping statute does not require proof of another felony but only proof of intent to commit a felony. "Thus, the Legislature has not indicated that a defendant must also commit another crime in order to be guilty of first degree kidnapping, and therefore the merger doctrine does not apply." *Id.* at 53. Hence, the law is now settled that just as kidnapping can never merge into robbery, neither can robbery merge into kidnapping. *Louis*, 155 Wn.2d at 571 (reaffirming the holdings of *Vladovic* and *Fletcher* that kidnapping and robbery never merge).

With this background in mind, we turn to the question of whether *Green* II held that due process requires more than an incidental restraint to support a kidnapping

---

[3] Though Berg and Reed do not raise a merger argument, it merits mentioning that this court has definitively held that kidnapping and robbery never merge. *In re Pers. Restraint of Fletcher*, 113 Wn.2d 42, 52-53, 776 P.2d 114 (1989); *Vladovic*, 99 Wn.2d at 421.

conviction. We hold that *Green* II did not alter the analysis of what evidence is sufficient to prove kidnapping.

The purpose of the sufficiency inquiry is to "ensure that the trial court fact finder 'rationally appl[ied]' the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt." *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 502, 299 P.3d 37 (2013) (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "In other words, the Jackson standard is designed to ensure that the defendant's due process right in the trial court was properly observed." *Id.* Accordingly, to assess the sufficiency of the evidence of kidnapping this court considers "whether, after viewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt." *Green* II, 94 Wn.2d at 221-22 (emphasis omitted). We take the State's evidence as true, and our review is de novo.

In *Green* II, the State proffered evidence showing that the defendant picked up an eight-year-old girl while she was walking on the sidewalk, placed his hand over her mouth, and carried her a short distance to the back of an apartment building. A neighbor who witnessed the incident found the victim lying dead in a pool of blood with a butcher knife beside her. *Id.* at 222-24. The defendant was convicted of aggravated murder in the first degree, aggravated by the fact that the murder was committed in furtherance of kidnapping. *Id.* at 219 (citing former RCW 9A.32.045(7) (1980)). The *Green* II court

thus reasoned that conviction for aggravated first degree murder in that case required proof of the elements of kidnapping. *Id.* at 224-25; *see* RCW 9A.40.010, .020.

Applying the new United States Supreme Court sufficiency standard announced in *Jackson*, *Green* II held there was insufficient evidence of the elements of kidnapping and therefore remanded the charge of aggravated first degree murder for a new trial focused on the alternate aggravating factor of rape. 94 Wn.2d at 219. First, the court noted that abduction could be proved in one of two ways: (1) restraint by secreting or holding a person where she is not likely to be found or (2) restraint by means of deadly force or threat of deadly force. The court then analyzed the evidence and observed

> the unusually short time involved, the minimal distance the victim was moved . . . the location of the participants when found, the clear visibility of that location from the outside as well as the total lack of any evidence of actual isolation from open public areas.

*Id.* at 226-27. The court concluded that no rational trier of fact could have found beyond a reasonable doubt that the victim had been restrained by means of secretion. *Id.* Additionally, the court held there was no evidence of restraint by means of threat to use deadly force and rejected the defendant's argument that restraint by deadly force could be shown by the killing itself. *Id.* at 228-30. Accordingly, the court held there was insufficient evidence of kidnapping and necessarily insufficient evidence of aggravated first degree murder based on kidnapping. *Id.* at 230.

In a later case, *State v. Brett*, 126 Wn.2d 136, 892 P.2d 29 (1995), this court was again presented with a challenge to the sufficiency of the evidence of kidnapping in a charge of aggravated first degree murder. Brett and his girl friend randomly selected the

home of an elderly, upper-middle class couple to rob and murder. The pair had planned to enter the elderly couple's homes at night, restrain them until morning when their bank opened, force them to withdraw money, and then kill them by lethal injection. Here, their plan derailed when the elderly couple's security alarm went off and the wife escaped. Brett shot and killed the husband with a sawed-off shotgun. *Id.* at 147-49. Brett was charged with aggravated first degree murder, with the allegation that the murder was committed in the course of, in furtherance of, or in immediate flight from robbery and burglary. *Id.* at 150.

There the court held that the State produced sufficient evidence that the murder occurred in the course of a kidnapping and therefore established the aggravator for the murder charge. The court reasoned that the defendants had an overarching plan to kidnap wealthy elderly people, transport them to their bank to withdraw money, and later kill them. Brett made a similar argument to that of the defendants here—namely, that the State had not proved the abduction element of kidnapping because the restraint was incidental to the murder. *Id.* at 166. But the court rejected that argument and held that "[t]he jury could rationally have found Brett and Martin were 'in the course of' a kidnapping when the plan went awry, and Brett murdered Mr. Milosevich." *Id.* at 167.

The State argues that *Green* II did not announce a new analysis for sufficiency of the evidence focusing on whether kidnapping was incidental to another crime. In contrast, the defendants cite *Green* II and *Brett* to support their argument that where a kidnapping is incidental to another crime, that evidence is insufficient evidence of

11

kidnapping. In particular, Berg and Reed highlight a secondary observation in *Green* II in which the court stated:

> Moreover, although appellant lifted and moved the victim to the apartment's exterior loading area, it is clear these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, the mere incidental restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping.

94 Wn.2d at 226-27 (emphasis omitted) (citing *Johnson*, 92 Wn.2d at 676). The defendants claim this language shows the court created a new due process requirement that a kidnapping that is incidental to the commission of another crime cannot establish sufficient evidence of the abduction element of kidnapping in any circumstances. The defendants contend that *Brett* reinforced this interpretation of *Green* II by recognizing that "[t]his court has held and the State concedes that the mere incidental restraint and movement of the victim during the course of another crime which has no independent purpose or injury is insufficient to establish kidnapping." *Brett*, 126 Wn.2d at 166. The *Brett* court cited *Green* II and *Johnson* as support for this statement and included parentheticals explaining that those cases held that "kidnapping merges into first degree rape." *Id.*

Viewed in isolation, this language from *Green* II and *Brett* does suggest that the incidental nature of a crime is always relevant to whether there is sufficient evidence of a "true kidnapping." Division Two of the Court of Appeals employed such an interpretation in *Korum* and again in this case. *Berg*, 177 Wn. App. at 136-38; *Korum*, 120 Wn. App. at 702-03. But this court closed the door on this analysis in *Vladovic*. In

addition to making a merger argument, the petitioner in *Vladovic* brought a separate sufficiency challenge, alleging that his kidnapping charge could not stand because "the acts did not bear the indicia of a true kidnapping." *Vladovic*, 99 Wn.2d at 424 (alluding to language from *Green* II). The petitioner contended that *Green* II mandated such a holding. But this court disagreed in a succinct discussion of *Green* II. The court explained that "[w]e stated in *Green* [II] that an ultimate killing of a victim does not itself constitute the restraint necessary to prove kidnapping," clarifying that *Green* II's holding rested on an assessment of the sufficiency of the evidence of the statutory elements of kidnapping and did not create a broader due process incidental restraint requirement for kidnapping charges. *Id.* The court concluded that "*Green* [II] is inapposite" and concisely rejected the petitioner's argument. *Id.*; *see also Phuong*, 174 Wn. App. at 527-28 (employing a similar interpretation of *Vladovic*).

Division One has addressed the issue at length. First, in *State v. Grant*, 172 Wn. App. 496, 301 P.3d 459 (2012), the court held that incidental restraint is purely a merger issue and rejected petitioner's invitation to adopt Division Two's interpretation of *Green* II. "[*Green* II] does not support the evidentiary analysis," the court reasoned, because in contrast to the current case, "Green was not separately charged with rape or kidnapping. *Green* [II] was therefore not a merger case." *Id.* at 503 (footnote omitted). The *Grant* court went on to reason that *Green* II did not intend to adopt a new standard for sufficiency of the evidence. "Borrowing merger terminology to describe the weaknesses

in the state's evidence is not the same as announcing a new approach to appellate review

. . . . Where our court announces a new test, it is inclined to say so." *Id.* at 506.

Division One reinforced this understanding in *Phuong*, where it applied the *Grant* reasoning to the unlawful imprisonment context, engaging in an in-depth review of our complicated jurisprudence in this area. The court analyzed this court's decisions in *Green* I, *Johnson*, *Green* II, *Vladovic*, *Fletcher*, and *Louis* and held that the incidental nature of a kidnapping is irrelevant to the sufficiency of the evidence for a discrete unlawful imprisonment charge. *Phuong*, 174 Wn. App. at 511-32. The court reasoned that the incidental restraint language used in *Green* II and cited by the petitioner "implicates the merger doctrine" and not the sufficiency of the evidence. *Id.* at 522.

Division Three is in accord with Division One. Division Three considered the issue in *State v. Butler*, 165 Wn. App. 820, 828-29, 269 P.3d 315 (2012), where the petitioner relied on Division Two's interpretation and contended that because the kidnapping was incidental to the robbery, the jury lacked sufficient evidence to convict him of kidnapping. The *Butler* court strongly rejected this argument, citing this court's jurisprudence addressing similar questions on the basis of merger, not sufficiency of the evidence, and holding that kidnapping and robbery do not merge. *Id.* at 829-33.

We agree and take this opportunity to clarify that *Green* II did not alter the sufficiency of the evidence analysis for kidnapping based on whether the kidnapping was "incidental" to another crime and to reinforce the distinction between concepts of merger and sufficiency of the evidence. Whether the jury had sufficient evidence to convict is a

distinct question from whether two convictions should merge. Sufficiency of the evidence considers whether there was enough evidence proffered from which a jury could find beyond a reasonable doubt that the elements of the crime had been proved. Merger accepts that there was sufficient evidence of the elements of the crime but considers further whether the legislature nevertheless intended for one of the offenses to be extinguished because of its redundant consideration within the primary offense. This court has never held that evidence of kidnapping is insufficient where the kidnapping conduct is incidental to another crime as a matter of due process. Instead, kidnapping conduct incidental to another crime has been addressed as an issue of merger and we have held that kidnapping and robbery never merge.

As applied to the facts of this case, we hold that the evidence presented was sufficient to support the kidnapping convictions. To prove kidnapping in the first degree, the State must show an intentional abduction with intent to facilitate the commission of any felony or flight thereafter. RCW 9A.40.020. Abduction can be proved in three ways; most relevant here is restraint by threat of deadly force. RCW 9A.40.010(1). Restraint, moreover, exists where a person's movement is restricted without consent in a way that interferes with his or her liberty. RCW 9A.40.010(6). Taking the evidence in the light most favorable to the State, there is sufficient evidence of kidnapping here. Reed instructed Berg to hold down Watts; Berg complied and held Watts at gunpoint on the ground for approximately 30 minutes. A jury could conclude that this established restraint. Berg restrained Watts by threat of deadly force, repeatedly threatening to kill

Watts if he moved from the ground, and both men threatened to kill Watts if he contacted police. This proof of restraint by threat of death was sufficient for a jury to conclude an abduction occurred. Finally, Berg and Reed were in the process of stealing Watts's marijuana plants and other possessions when they engaged in this kidnapping conduct. A jury could conclude that Berg and Reed committed the kidnapping with an intent to facilitate the commission of a felony. Accordingly, we hold there was sufficient evidence for a jury to find all elements of kidnapping proved beyond a reasonable doubt.

## CONCLUSION

We hold that the kidnapping convictions for both defendants were supported by evidence sufficient for a rational jury to find all the elements of kidnapping beyond a reasonable doubt. Contrary to the defendants' assertions, *Green* II did not create a new requirement that due process is not satisfied when the kidnapping conduct is incidental to the commission of another crime. Accordingly, we reverse the Court of Appeals and reinstate the defendants' kidnapping convictions.

No. 89570-8

Madsen, C.J.

WE CONCUR:

Wiggins, J.

Stephens, J.

No. 89570-8

GORDON McCLOUD, J. (concurring)—The majority concludes that "[*State v.*] *Green*[, 94 Wn.2d 216, 616 P.2d 628 (1980) (*Green* II)] did not alter the analysis of what evidence is sufficient to prove kidnapping." Majority at 8. It does so by characterizing *Green* II as an application of the merger doctrine instead of a sufficiency of the evidence case. *Id.* at 13-15.

In fact, neither the majority nor the concurring opinions in *Green* II discussed the merger doctrine at all. *Green* II, 94 Wn.2d at 216, 218-35, 235-40 (Utter, C.J., concurring), 240-41 (Dolliver, J., concurring in result). Instead, they agreed that when the evidence shows that a kidnapping was "actually an integral part of" another crime, that evidence is insufficient to establish kidnapping beyond a reasonable doubt. *Id.* at 226-27. The court reached this conclusion under the heading "FAILURE OF EVIDENCE TO PROVE ESSENTIAL ELEMENTS OF FIRST DEGREE KIDNAPPING UNDER JACKSON V. VIRGINIA." *Id.* at 224 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

1

Indeed, *Green* II was a reconsideration,[1] which this court granted so that it could apply the United States Supreme Court's then-recent decision in *Jackson*.[2] *Jackson* held that a conviction violates Fourteenth Amendment due process clause protections if it is based upon evidence that is insufficient to lead a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 307, 318-19; U.S. CONST. amend. XIV, § 1.

Applying the holding in *Jackson*, the *Green* II court held that where a defendant was convicted of kidnapping, that conviction would be overturned if the kidnapping was "merely incidental to the commission of another crime." *Green* II, 94 Wn.2d at 227 (citing *People v. Cassidy*, 40 N.Y.2d 763, 767, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976)). The court explained that this due process standard required a fact-specific inquiry into the "nature" of the abduction at issue:

> Although we characterize the movement and restraint in this case as *incidental*, we do not mean to suggest that under every conceivable set of facts a movement of 20 to 50 feet or being found in a stairwell would be *incidental*. That which constitutes *incidental* movement is

---

[1] *State v. Green*, 91 Wn.2d 431, 588 P.2d 1370 (1979) (*Green* I).

[2] *Green* II, 94 Wn.2d at 220 ("There is, however, an even more salient reason for departing from our view in *Green* I. Shortly after the publication of *Green* I, the United States Supreme Court held in *Jackson*[, 443 U.S. 307], that on review the proper test is whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a *reasonable doubt*.").

2

not solely a matter of measuring feet and inches. It is a determination to be made under the facts of each case, in light of the totality of surrounding circumstances. This characterization is as much a consideration of the relation between the restraint and the homicide as it is a measure of the precise distance moved or place held. It involves an evaluation of the nature of the restraint in which distance is but one factor to be considered.

*Id.* at 227. In short, *Green* II held that for purposes of Fourteenth Amendment due process protections, an "incidental" kidnapping was no kidnapping at all. *Id.* Its use of the word "incidental" may have suggested merger, but the *Green* II court was really inquiring about whether defendant's movement of the victim was really de minimis.

The majority rejects that holding, but it purports to distinguish *Green* II as a merger case that did not involve a robbery charge.[3] That distinction is untenable. Instead of reinterpreting *Green* II as a merger case, the majority should acknowledge that it is really overruling *Green* II.

But we do not overrule our own prior precedent unless it is "incorrect and harmful." *State v. Berlin*, 133 Wn.2d 541, 547, 947 P.2d 700 (1997). If *Green* II

---

[3] Majority at 14-15 ("This court has never held that evidence of kidnapping is insufficient where the kidnapping conduct is incidental to another crime as a matter of due process. Instead, kidnapping conduct incidental to another crime has been addressed as an issue of merger and we have held that kidnapping and robbery never merge.").

were a merger case, then it would probably be incorrect because it would have conflated the double jeopardy principles underlying the merger doctrine with the due process protections at issue in *Green* II. And some of the citations in *Green* II do suggest that that decision relied on merger principles. 94 Wn.2d at 227 (citing *State v. Johnson*, 92 Wn.2d 671, 676, 600 P.2d 1249 (1979); *Cassidy*, 40 N.Y.2d at 767). But other citations suggest that *Green* II relied on sufficiency-of-evidence principles. *E.g.*, *id.* at 227-28 (applying *Jackson*).

The reliance on *Jackson* is *not* incorrect. Indeed, other courts have held that minimal or de minimis movements of a victim are insufficient to prove a true kidnapping (or kidnapping sentence enhancement). *E.g.*, *United States v. Marx*, 485 F.2d 1179, 1186 (10th Cir. 1973) (insufficient evidence to support forced "'accompan[iment]'" aggravating factor, and drawing from common law meaning of "kidnap"); *United States v. Strobehn*, 421 F.3d 1017, 1020 n.1 (9th Cir. 2005) (sufficient evidence despite minimal movement), 1022-27 (Fletcher, J., dissenting) (insufficient evidence). And if there is any question about whether the statute was intended to reach de minimis movements, the answer must be based on the rule of lenity.

It is certainly true that, as the majority states, *Green* II has generated conflict in the Court of Appeals.[4] Majority at 12-14. It is also true that *Green* II's "merely incidental" analysis, 94 Wn.2d at 227, has led to arguably inconsistent results based on individual judges' feelings about whether the State has overcharged.[5]

But the solution is not to recharacterize *Green* II as a merger case rather than a due process case and then overrule it without saying so. The solution is to acknowledge that *Green* II was based on *Jackson*, to recognize that *Green* II's "incidental" language was essentially a de minimis inquiry, and to apply that de minimis inquiry to this case.

The 30-minute forced detention of the victim in this case, by physical restraint and the threat of death with a gun to the victim's head, is certainly not de minimis—regardless of whether it is "incidental" to another crime. It is lengthy, major,

---

[4] *Compare State v. Rattana Keo Phuong*, 174 Wn. App. 494, 519-20, 299 P.3d 37 (2013) (explaining that *Green* II is really a merger case), *with State v. Grant*, 172 Wn. App. 496, 503, 301 P.3d 459 (2012) (explaining that *Green* II is not a merger case).

[5] *Compare State v. Lindsay*, 171 Wn. App. 808, 840-44, 288 P.3d 641 (2012) (kidnapping merely incidental under *Green* II, where defendants first took unconscious victim's property, then tied the victim up and proceeded to "demean, humiliate, and assault" him), *with State v. Whitney*, 44 Wn. App. 17, 21, 720 P.2d 853 (1986) (under *Green* II, kidnapping was not merely incidental to rape where defendant forced victim into his car at knifepoint).

culpable, and terrifying. I therefore concur in the majority's decision to affirm. But I respectfully disagree with what I see as its decision to silently overturn controlling precedent on the insufficiency of evidence issue.

Gordon McCloud, J.

Gonzalez, J.

Fairhurst, J.