FILED
COURT OF APPEALS
DIVISION II

2014 AUG 26 AM 11: 35

STATE OF WASHINGTON
BY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON<br><br>Respondent,<br><br>v.<br><br>JERRO DE JON DAGRACA,<br><br>Appellant. | No. 43358-3-II<br><br><br><br>UNPUBLISHED OPINION |
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>COREY DUAWAYN YOUNG,<br><br>Appellant. | Consolidated with No. 43365-6-II<br><br><br><br>UNPUBLISHED OPINION |

HUNT, J. — Jerro De Jon DaGraca and Corey Duawayn Young appeal their jury convictions and sentences for kidnapping and robbery, for which Young's sentences include firearm enhancements. Young also appeals his separate conviction and sentence for first degree unlawful possession of a firearm. Both DaGraca and Young (Defendants) argue that the trial court erred in ruling that the kidnapping was not "incidental to the ongoing armed robbery."[1] Young separately argues that (1) the prosecutor committed misconduct by questioning him about a bullet located in the pocket of a red and black jacket that he wore during the crimes, and (2) his counsel was ineffective in failing to object to the prosecutor's questioning. DaGraca separately

---

[1] Br. of Appellant (Young) at 7.

argues that RCW 13.04.030(1)(e)(v)(A), under which he was tried in adult court instead of juvenile court, violates the Eighth Amendment to the United States Constitution. DaGraca also adopts and incorporates the arguments in Young's initial and supplemental briefing.

In a Statement of Additional Grounds (SAG), Young asserts that the trial court denied him a fair trial, compelled him to testify against himself, violated his time-for-trial rights, and committed other irregularities warranting reversal. In his SAG, DaGraca asserts that (1) his counsel was ineffective for failing to object to jurisdiction and failing to request a remand to the juvenile court, and (2) his counsel's deficient performance denied him a fair trial. We hold that RCW 13.04.030(1)(e)(v)(A) is not unconstitutional, the kidnapping was not incidental to the robbery, and the prosecutor's misconduct during cross-examination was curable by an instruction.[2] We affirm both defendants' convictions and sentences.

FACTS

I. ROBBERY AND KIDNAPPING

Early in the morning on November 19, 2011, Moua Yang was talking on the phone in his car in his apartment parking lot when Corey Duawayn Young and Jerro De Jon DaGraca[3] jumped over the parking lot fence and approached him. One[4] pointed a gun at him, said, "Today is a bad day. . . . Give me all your money; give me anything you got," and took Yang's cell

---

[2] Defendants' other arguments fail.

[3] At the time he committed these crime, DaGraca was still a juvenile, approximately one month and two days short of turning 18. The State charged him as an adult. RCW 13.04.030(1)(e)(v)(A).

[4] At trial, Yang positively identified both men as his assailants. In discussing this fact, Young's brief of appellant notes that he was the man with the gun.

2

phone and $117. 1 Verbatim Report of Proceedings (VRP) at 115. The other told the first man to search Yang's pockets for credit cards. The first man, the one with the gun, found an Electronic Benefit Transfer (EBT) "Quest"[5] food stamp card and a military identification card in Yang's pocket and demanded the personal identification number for the Quest card. Yang gave him a fictional number.

Apparently after checking the number on his phone, the man with the gun told Yang, "It's not working; you're lying," hit Yang in the stomach, put the gun on Yang's stomach, and punched Yang in the face. 1 VRP at 119. Both men then ordered Yang, at gunpoint, to drive them to a nearby 7-Eleven, saying, "Let's go to 7-Eleven to get food and money. If you don't get money for us, you're dead." 1 VRP at 119. They pulled Yang "back [into] the car" and kept the gun pointed at him while they directed Yang to drive for "about five[-]seven minutes" to a 7-Eleven store. 1 VRP at 121. During the drive, the men said that after they got the money, they would kill Yang and "put [him] in the lake so they [could] have the car." 1 VRP at 121.

Several police officers, standing at the 7-Eleven, saw Yang pull into the lot "very quickly," "slam . . . on [his] brakes," and "jump . . . out and yell" that he was being robbed and that "[t]hey got guns." 1 VRP at 71. DaGraca and Young fled the vehicle, and the police gave chase on foot. According to Officer Christopher Michael Bowl, the man "with a red hat and red and black jacket jumped out of the [p]assenger front seat," and the other man, "in a black jacket, jump[ed] out of the rear passenger side of the car." 1 VRP at 73. 74. The two men split up as the police chased them through the parking lot of an adjacent shopping mall. Bowl observed the man in the red hat and red and black jacket shed the jacket.

---

[5] Clerk's Papers (CP) (Young) at 6.

The police captured and arrested Young and DaGraca, retraced their steps, and found the discarded hat and jacket. Officer Michael Robert Wulff found a gun on the "front passenger side floorboard"[6] of Yang's car, five .22 caliber bullets in a magazine in the gun, and a sixth round loaded in the chamber.

## II. PROCEDURE

On November 21, 2011, the State charged DaGraca[7] and Young with first degree robbery and first degree kidnapping; the State separately charged Young with first degree unlawful possession of a firearm. The State also alleged special firearm sentencing enhancements for the robbery and kidnapping charges.

### A. Continuances

Forty-nine days into the case, at a January 9, 2012 hearing, DaGraca's attorney requested a continuance for time to prepare adequately. DaGraca himself objected to this continuance;[8] Young agreed to it. Because of the "very serious nature of [the] charges and the fact that Mr. DaGraca and Mr. Young [would be] likely looking at substantial jail time if they [would be] convicted," the trial court granted the continuance to February 23. VRP (Jan. 9, 2012) at 4.

At the February 23 hearing, the State moved for a continuance; both defendants objected. The trial court continued the case until February 27 because no courtrooms were available. On February 27, the trial court set trial over to the next day. At the February 28 hearing, the trial

---

[6] 1 VRP at 30.

[7] The State charged DaGraca in adult court.

[8] Although DaGraca objected to all requested continuances, he did not assert CrR 3.3 time-for-trial violations below. Nor does he so assert on appeal.

4

court proposed continuing the trial to March 8, finding "good cause" because the trial judge was unavailable to begin on February 29. VRP (Feb. 28, 2012) at 2-3.

On March 8, the trial court heard another State's motion to continue because the prosecutor was unavailable. Young agreed, but DaGraca objected. The trial court found "good cause" to continue the matter one week to March 15. VRP (Mar. 8, 2012) at 10. At the March 15 hearing, the trial court again continued the trial, this time to March 20, based on the prosecutor's absence being "good cause"; both defendants objected. VRP (Mar. 15, 2012) at 12. On March 20, the trial court found "good cause" and continued the trial to March 26 because courtrooms were unavailable; again, both defendants objected. On March 26, again because courtrooms were unavailable, the trial court continued the case one more day. Trial began the next day, on March 27.

### B. Jury Voir Dire

During voir dire on the first day of trial, Young's defense counsel asked several prospective jurors about their attitudes toward tattoos. Prospective juror 18, a prison corrections officer, responded that he recognized that certain tattoos reflected gang affiliations, but not all tattoos had such a purpose, and he did not have a problem with tattoos. This prospective juror, however, did not serve on the jury that tried the case.

### C. Trial

The State presented testimonies from the police officers and Yang, as previously described. The State also offered as exhibits the items the police had recovered during DaGraca and Young's flight and the gun from Yang's car. DaGraca and Young each testified and denied robbing or kidnapping Yang.

DaGraca testified that he and Young had been celebrating an upcoming music performance, were looking for someone to buy them alcohol, were not "familiar with"[9] Yang, but nevertheless approached him and asked "if he wanted to buy [them] some alcohol." 2 VRP at 149. Yang told them to get in his car; with DaGraca sitting behind Yang and Young sitting in the front passenger seat, Yang drove to the 7-Eleven. On the way, they asked to use Yang's phone to arrange a marijuana purchase; Yang allowed them to use his phone and volunteered to drive them to buy marijuana if Yang could try it with them. As they approached the 7-Eleven, Yang drove into the parking lot, where the police were standing, and told the police that he was being robbed.

On cross-examination, the prosecutor asked Young whether he had another bullet in his jacket, even though there was no evidence in the record that the police found an additional bullet in Young's jacket. Young did not object to the questioning, but he denied knowledge of any bullet in the jacket.

Neither DaGraca nor Young objected to any of the court's proposed jury instructions. But after the trial court returned from recess, Young's counsel moved for a mistrial, stating, "Apparently, I misunderstood what [Young] said. He apparently told me he did not want to [testify]. I thought he said he did want to [testify]." 2 VRP at 181. The State objected. The trial court denied the motion for mistrial on grounds that counsel had had ample time to clarify whether Young would testify and that when Young took the stand, he did not express any desire not to testify.

---

[9] 2 VRP at 156.

The jury found DaGraca guilty of first degree robbery and first degree kidnapping; but did it not reach a unanimous decision about whether he had been armed with a firearm during the commission of either offense. The jury found Young guilty of all three charges: first degree robbery, first degree kidnapping, and unlawful possession of a firearm. By special verdict, the jury also found that Young had been armed with a firearm during the robbery and kidnapping.

## D. Sentencing

At the sentencing hearing, the trial court denied Defendants' motion to merge their kidnapping and robbery convictions, stating that, although the crimes were "related," they were separate and thus did not qualify as "same criminal conduct under [RCW] 9.94A.589." VRP (Apr. 23, 2012) at 4. The trial court also ruled that the kidnapping was not incidental to the robbery and, thus, these two crimes must be treated as separate.

The trial court sentenced DaGraca to standard range sentences of 68 months of incarceration for count I (first degree robbery) and 72 months for count II (first degree kidnapping), to run concurrently. As required by RCW 9.94A.701, the trial court also imposed 18 months of community custody on count I (violent offense) and 36 months of community custody on count II (serious violent offense).

The trial court sentenced Young to standard range sentences of 87 months on count I (first degree robbery), 110 months on count II (first degree kidnapping), and 54 months on count III (first degree unlawful possession of a firearm), all to run concurrently. The trial court added firearm enhancements of 60 months to Young's base sentences for counts I and II, to run consecutively to each other and to the sentences on the underlying counts. The trial court also

7

imposed 18 months of community custody for count I and 36 months of community custody for count II.

DaGraca and Young appeal their convictions and sentences.

## ANALYSIS

### I. DaGraca: Adult Court Jurisdiction

DaGraca argues that RCW 13.04.030(1)(e)(v)(A), under which he was tried as an adult court rather than as a juvenile, violates both the due process clause and the Eighth Amendment to the United States Constitution (cruel and unusual punishment). He contends that in automatically vesting the adult superior court with exclusive original jurisdiction over the serious violent offenses he was charged with committing (first degree robbery and first degree kidnapping), the statute failed to take into account his youth. DaGraca's constitutional challenges fail.

As our Washington Supreme Court has recently reiterated:

> In adopting Washington Constitution article IV, section 6, the people of this state granted the superior courts original jurisdiction 'in all criminal cases amounting to felony' and in several other enumerated types of cases and proceedings. In these enumerated categories where the constitution specifically grants jurisdiction to the superior courts, the legislature cannot restrict the jurisdiction of the superior courts. *See Blanchard v. Golden Age Brewing Co.*, 188 Wn. 396, 418, 63 P.2d 397 (1936).
> [. . . .]
> Article IV, section 6 also grants the superior courts *residual* jurisdiction over nonenumerated cases and proceedings, providing that superior courts 'shall *also* have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court . . . .'

8

*State v. Posey*, 174 Wn.2d 131, 135-36, 272 P.3d 840 (2012). The court went on to explain the evolution of juvenile court as a "'division of the superior court, not a separate court,'"[10] a statutory creation of the legislature that "[*could* ]*not*" and "*did not*" "divest the superior courts of their criminal jurisdiction over juveniles." *Posey*, 174 Wn.2d at 140. Thus, "[t]he juvenile courts are properly understood, jurisdictionally, as a separate *division* of the superior courts." *Posey*, 174 Wn.2d at 140 (emphasis added).

When DaGraca committed the charged crimes, he was a juvenile, approximately one month shy of his eighteenth birthday. RCW 13.04.030(1)(e)(v)(A) and (C), respectively, expressly exclude from juvenile court jurisdiction 16- and 17-year-old minors charged with committing first degree robbery and first degree kidnapping.[11] Thus, the superior adult court had original jurisdiction over DaGraca for these offenses, contrary to DaGraca's argument that this statute automatically removes jurisdiction from the juvenile court.

---

[10] *Posey*, 174 Wn.2d at 137 (quoting *State v. Werner*, 129 Wn.2d 485, 493, 918 P.2d 916 (1996).

[11] RCW 13.04.030 provides, in part:
> (1) Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings:
> . . . .
> (e) Relating to juveniles alleged or found to have committed offenses . . . unless:
> . . . .
> (v) The juvenile is sixteen or seventeen years old on the date the alleged offense is committed and the alleged offense is:
> (A) A *serious violent offense* as defined in [former] RCW 9.94A.030 [(2011)];
> . . . .
> (C) *Robbery in the first degree*, rape of a child in the first degree, or drive-by shooting, committed on or after July 1, 1997

(Emphasis added).
> Former RCW 9.94A.030 (2011), in turn, provided, in part:
> (44) "Serious violent offense" is a subcategory of violent offense and means:
> . . . .
> (vi) *Kidnapping in the first degree*.

(Emphasis added).

9

DaGraca argues in general that our Supreme Court's 1996 decision *In re Boot*, 130 Wn.2d 553, 925 P.2d 964 (1996), upholding the constitutionality of a previous version of the juvenile court decline statute, "is no longer good law." Br. of Appellant (DaGraca) at 8. He relies primarily on United States Supreme Court cases addressing whether statutes that impose the death penalty or life imprisonment without parole for juveniles violate the Eighth Amendment.[12] Although DaGraca contends that RCW 13.04.030 runs afoul of the Eighth Amendment, he never argues how his sentences were "cruel and unusual." U.S. CONST. amend. VIII. On the contrary, the trial court sentenced DaGraca to 68 months of confinement for count I (first degree robbery) and 72 months for count II (first degree kidnapping), far short of the "most severe punishments" at issue in *Graham*.[13] *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Furthermore, DaGraca fails to show that his standard range sentences

---

[12] DaGraca cites *Graham v. Florida*, in which the United States Supreme Court held that the Eighth Amendment to the United States Constitution prohibits a court from imposing a sentence of life without parole on a juvenile offender for a nonhomicide crime and stated: "An offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Graham v. Florida*, 560 U.S. 48, 76, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Based on this quote, and ignoring *Graham*'s homicide/life without parole context, DaGraca (1) essentially asks us to interpret *Graham* to mean that any jurisdictional or sentencing statute that automatically treats a juvenile the same as an adult is unconstitutional; and (2) contends that the superior court's "'automatic'" exercise of original jurisdiction over him violated the Eighth Amendment and *Graham*. Br. of Appellant (DaGraca) at 7. As we explain above, we reject DaGraca's expansive reading of *Graham*.

[13] Nor does DaGraca's attempted analogy persuade us that his *potential* maximum sentence of life imprisonment for either offense (based on his having a previous felony conviction) was unconstitutionally cruel and unusual. RCW 9.94A.515 (providing standard sentence ranges); RCW 9A.20.021(1)(a) (establishing a maximum term of life imprisonment for class A felonies).

No. 43358-3-II, consolidated with 43365-6-II

constitute cruel and unusual punishment or otherwise violate the Eighth Amendment.[14]

Beginning with the presumption of constitutionality accorded to our legislature's enactments, we hold that RCW 13.04.030(1)(e)(v)(A) does not violate the Eighth Amendment by treating 16- and 17-year-olds as adults for first degree robbery and first degree kidnapping charges. *State v. Jorgenson*, 179 Wn.2d 145, 150, 312 P.3d 960 (2013).

## II. KIDNAPPING AND ROBBERY

DaGraca and Young contend that the trial court should have dismissed their kidnapping convictions because their restraint of Yang, a necessary element of kidnapping, was "incidental to the ongoing armed robbery," and they were not separate crimes.[15] The State responds that, when DaGraca and Young took Yang's money and cards, they completed the robbery and any further restraint thereafter was a separate crime. We agree with the State and the trial court that the kidnapping and robbery were separate crimes.

### A. Kidnapping not Incidental to Robbery

The restraint and movement of a victim that are merely incidental to and not independent of the underlying crime do not constitute kidnapping. *State v. Green*, 94 Wn.2d 216, 227, 616

---

[14] Addressing former RCW 13.04.030(1)(e)(v)(A) (1999), Division Three of our court held that our state juvenile court automatic decline statute does not violate equal protection and due process rights. *State v. Posey*, 130 Wn. App. 262, 269, 122 P.3d 914 (2005), *rev'd in part, aff'd in part on other grounds*, 161 Wn.2d 638, 167 P.3d 560 (2007). The Supreme Court did not address and left intact Division Three's holding the statute constitutional. *Posey*, 161 Wn.2d at 643. For purposes of our analysis here, former RCW 13.04.030(1)(e)(v)(A) does not differ materially from the current version of the statute.

[15] Br. of Appellant (Young) at 7.

11

P.2d 628 (1980).[16] "Although rooted in merger doctrine, courts reviewing kidnapping charges that are arguably merely incidental to another crime frequently borrow a sufficiency of the evidence analysis." *State v. Elmore*, 154 Wn. App. 885, 901, 228 P.3d 760, *review denied*, 169 Wn.2d 1018 (2010). Thus, in general, whether "kidnapping is incidental to the commission of other crimes" involves both "a fact-specific determination" and a legal determination about whether the facts merge to support one crime instead of two. *Elmore*, 154 Wn. App. at 901 (citing *Green*, 94 Wn.2d at 225-27 and *State v. Korum*, 120 Wn. App. 686, 707, 86 P.3d 166 (2004), *aff'd in part, rev'd in part on other grounds*, 157 Wn.2d 614, 141 P.3d 13 (2006)). Here, we review de novo the trial court's conclusion of law that the restraint was not incidental to the robbery.

> In *Berg*, we held that, as a matter of law, that
>
> restraint was incidental to the . . . robbery when (1) facilitating the robbery was the restraint's sole purpose, (2) the restraint was inherent in the robbery, (3) the robbery victims were not transported from their home to a place where they were not likely to be found, (4) the restraint did not last substantially longer than necessary to complete the robbery, and (5) the restraint did not create a significant independent danger.

*State v. Berg*, 177 Wn. App. 119, 136-37, 310 P.3d 866 (2013) (citing *Korum*, 120 Wn. App. at 707), *review granted*, 179 Wn.2d 1028 (2014).

Once DaGraca and Young took the Quest card and the military identification card from Yang's person by force, they had completed the robbery; further restraint was unnecessary. Thus, DaGraca and Young's subsequent ordering Yang at gunpoint to drive them to the 7-Eleven

---

[16] *See also State v. Elmore*, 154 Wn. App. 885, 901, 228 P.3d 760, *review denied*, 169 Wn.2d 1018 (2010).

12

was neither "inherent" in nor "integral to [the] commission" of the already completed robbery;[17] rather, it was for the new purpose of obtaining money from Yang's Quest card. By restraining Yang at gunpoint and threatening to kill him during the drive to the 7-Eleven[18], DaGraca and Young created a new danger separate from the already completed robbery. We hold that DaGraca and Young have not shown that the kidnapping restraint "was so incidental to" the robbery "that it could not support a separate conviction." *Elmore*, 154 Wn. App. at 903.

### B. Kidnapping Not "Same Criminal Conduct" as Robbery

DaGraca and Young also argue that the trial court abused its discretion in not finding that Yang's kidnapping merged into the "same criminal conduct" as his robbery. Br. of Appellant (Young) at 9; Br. of Appellant (DaGraca) at 18. For sentencing purposes, "'[s]ame criminal conduct' . . . means two or more crimes require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a).[19] Here, the trial court ruled that DaGraca and Young had completed the robbery when they

> stuck the gun in Mr. Yang's face and took his wallet. They then formed the intent to try to get some more money from him and formed the intent to abduct him at gunpoint in his car. That is a separate crime.

VRP (Apr. 23, 2012) at 4-5.

---

[17] *Berg*, 177 Wn. App. at 136; *Korum*, 120 Wn. App. at 703, 707.

[18] Yang testified that one of the defendants had said, "If you don't get money for us, you're dead," and that once Yang obtained the money for them, "they[ would] kill [him] and put [him] in the lake so they [could] have the car." 1 VRP at 119, 121.

[19] The legislature amended RCW 9.94A.589 in 2014. LAWS OF 2014, ch. 101 § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

We review a trial court's determination of "same criminal conduct" under RCW 9.94A.589(1)(a) for abuse of discretion. *State v. Graciano*, 176 Wn.2d 531, 533, 295 P.3d 219 (2013). The defendant bears the burden of proving all three statutory elements of "same criminal conduct." *Graciano*, 176 Wn.2d at 538; *see* RCW 9.94A.589(1)(a). "'[T]he statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act.'" *Graciano*, 176 Wn.2d at 540 (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

Here, we need not decide whether DaGraca and Young's objective intents changed after they took Yang's wallet because the evidence shows that the kidnapping occurred *after* DaGraca and Young had robbed Yang of his property and continued in Yang's car when DaGraca and Young forced Yang to drive them to the 7-Eleven. Because the robbery and the kidnapping occurred at different times and in different locations (stationary car for the robbery and moving car for the kidnapping), the trial court properly ruled that the crimes were not the same criminal conduct for sentencing purposes.

### III. PROSECUTORIAL MISCONDUCT

#### A. No Prejudice

Defendants argue that the prosecutor committed misconduct by repeatedly questioning him about a bullet located in the red and black jacket that he wore during the crimes.[20] Officers had already testified that they found six bullets with the gun. While cross-examining Young, however, the prosecutor asserted that a .22 caliber bullet had been found in the jacket and asked

---

[20] Although Young asserts that the prosecutor cross-examined him about a "seventh bullet," the prosecutor never referred to a "seventh" bullet. Suppl. Br. of Appellant (Young) at 6.

14

whether the bullet belonged to Young, even though the State had no evidence that such a bullet existed.[21] Neither defendant objected to the prosecutor's questioning, and Young denied knowledge of any bullet in the jacket. We agree with Defendants that this cross-examination was improper. Nevertheless, reversal is not required because, as we next explain, Defendants waived any error when they did not object to the misconduct below.

A defendant who "fails to object or request a curative instruction at trial" waives his right to challenge the misconduct[22] "unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).[23] Assuming, without deciding, that the prosecutor's misconduct was flagrant and ill-intentioned, Defendants fail to show how an instruction could not have cured any resulting prejudice if Young had timely objected. Young's failure to object denied the trial court an opportunity to instruct the jury to disregard the now-challenged question.[24] Thus, Defendants' prosecutorial misconduct challenge fails.

---

[21] The State concedes that the record contains no evidence of such additional bullet.

[22] The trial court must have the opportunity to correct any alleged error, and the defendant's failure to object at trial waives his right to challenge the remarks on appeal. *State v. Hamilton*, 179 Wn. App. 870, 878, 320 P.3d 142 (2014); *State v. Fullen*, 7 Wn. App. 369, 389, 499 P.2d 893, *cert. denied*, 411 U.S. 985 (1973).

[23] *See also State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

[24] Young also argues that the prosecutor's repeated questioning was "so cumulative and pervasive" that a jury instruction could not have cured the resulting prejudice. Suppl. Br. of Appellant (Young) at 9. But even if Young could show that the prosecutor's misconduct was incurable, he fails to show a substantial likelihood that the statements affected the jury's verdict. *Emery*, 174 Wn.2d at 760. "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *Emery*, 174 Wn.2d at 764 n.14.

### B. Effective Assistance of Counsel

Young also argues that he received ineffective assistance when his trial counsel failed to object to the prosecutor's cross-examination about the bullet. This argument also fails.

To prove ineffective assistance of counsel, Young must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). A defendant alleging ineffective assistance must overcome "'a strong presumption that counsel's performance was reasonable.'"[25] *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)), *adhered to in part on remand*, 168 Wn. App. 635, 278 P.3d 225 (2012), *petition for cert. filed*, May 27, 2014.. "Deficient performance is not shown by matters that go to trial strategy or tactics." *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). If

---

Here, the misconduct was harmless because, "look[ing] only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt," we are "convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d at 412, 426, 425, 705 P.2d (1985). Even without the prosecutor's improper question about the additional bullet, there was ample evidence of other bullets, Young and DaGraca did not present credible stories, and the evidence overwhelmingly supported the conclusion that they robbed and kidnapped Yang.

Other evidence linked the firearm to Young and gave the jury a sufficient independent basis on which to convict him of unlawful possession of a firearm. The jury heard Officer Bowl's testimony that the individual in a "red and black jacket" (later identified as Young) jumped out of the front passenger seat, 1 VRP at 73; Yang's testimony that the individual with the gun was in the front passenger seat; and Young's testimony that he had discarded a "red jacket" while fleeing from the police. 2 VRP at 167. Furthermore, after this cross-examination, the prosecutor never again raised the issue of an additional bullet or otherwise again implied that Young had a bullet in his jacket.

[25] We also presume that, under the circumstances, the alleged errors "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

counsel's conduct "'can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" *Grier*, 171 Wn.2d at 33 (quoting *Kyllo*, 166 Wn.2d at 863).

To show prejudice, the defendant must establish that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862). A defendant's failure to prove either prong of this test ends our inquiry. *Hendrickson*, 129 Wn.2d at 78. Young fails to meet his burden here. Young cannot show prejudice flowing from counsel's failure to object to the prosecutor's cross-examination of him about the bullet. Even if Young's counsel had objected and the trial court had responded by precluding the prosecutor's questions, Young fails to show a substantial likelihood that this cross-examination affected the jury's verdict because there was ample evidence linking the firearm to Young, supporting the jury's verdict that he robbed and kidnapped Yang at gunpoint. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Because Young fails to meet the prejudice prong of the test, he fails to show that he received ineffective assistance counsel.

IV. STATEMENTS OF ADDITIONAL GROUNDS

A. DaGraca

In his SAG, DaGraca asserts that (1) his counsel was ineffective for failing to object to the adult superior court's jurisdiction and for failing to request a remand to the juvenile court, and (2) his counsel's deficient performance denied him a fair trial. We have already upheld the superior court's exercise of jurisdiction under RCW 13.04.030(1)(e)(v). Thus, counsel did not render deficient or ineffective assistance in failing to object to the juvenile court's decline of jurisdiction under this statute.

### B. Young

#### 1. Trial court irregularities

Young asserts that "[t]he trial court abused its discretion by allowing jurors to sit and congregate in the hallway during trial," failing to tell the jurors that they could not be in the hallway, and failing to admonish them to disregard anything they might have seen or heard; he contends that these errors tainted the proceedings and violated his right to a fair trial. SAG (Young) at 4. We disagree.

The "trial court has wide discretionary powers in conducting a trial and dealing with irregularities which arise." *State v. Westlund*, 13 Wn. App. 460, 472, 536 P.2d 20, *review denied*, 85 Wn.2d 1014 (1975). And, unless Young shows that "the irregular incidents are of a number and magnitude that they are per se unfair, that is, prejudice undoubtedly resulted," he must show "actual prejudice." *Westlund*, 13 Wn. App. at 472. Young fails to demonstrate prejudice.

During the second day of trial, the prosecutor believed that he had seen "about three [jurors]" "in the hallway" and asked the trial court to request the public in the courtroom (which included the defendants' friends) not to "congregate outside the courtroom . . . in the hallway." 1 VRP at 87. The trial court announced that "the jurors shouldn't be sitting out there." 1 VRP at 87. Young's counsel responded, "[A]s far as congregating, I think [the friends of Defendants] have a right to be in the hall as long as they're quiet, and, as the Court pointed out, the jurors are not supposed to be there." 1 VRP at 88. At the next recess later that day, the trial court admonished the jury not to "discuss the case among [themselves] or with others." 1 VRP at 102.

18

Neither Young nor DaGraca raised any objections to the fairness of the proceedings, and neither asked the trial court to investigate further whether jurors were sitting in the hallway.

Nothing in the record shows that there was another similar incident. Neither the State nor Defendants raised a similar concern again during trial. Furthermore, Young has not shown that the incident prejudiced him in any way. Thus, Young has failed to show that the trial court abused its discretion or violated his right to a fair trial.

## 2. Juror bias

Young also asserts that he was denied an impartial jury and a right to a fair trial because one of the jurors was biased against him, contending that the juror believed that Young's tattoos signified gang affiliation and that the juror's comments reflected bias.[26] The record, however, does not support Young's assertions: Nothing in the record shows that this juror was biased; on the contrary, the juror's statements reflected an ability to remain impartial. Young never raised an objection to the fairness of the proceedings. Furthermore, prospective juror 18 did not serve on the jury that found Young guilty. Thus, Young's challenge lacks merit.

---

[26] Apparently Young refers to prospective juror 18, whom counsel questioned during voir dire about his attitude towards tattoos. Juror 18 stated that tattoos could sometimes, but not always, signal gang affiliations; this prospective juror also confirmed that tattoos would not "cause [a] problem" for him. Suppl. VRP (Mar. 27, 2012) at 97.

3. Prosecutorial misconduct: Referencing clothing and aliases

Young further asserts that the prosecutor committed misconduct by referring to his (Young's) clothing colors and aliases to insinuate gang affiliation, which prejudiced him. This assertion also fails.

During trial, police officers identified clothing items found at the scene and on the defendants, which included a "red bandanna," 1 VRP at 44, "a red hat," and a "red and black jacket." 1 VRP at 73. The prosecutor cross-examined Young about the clothing that he had worn during the incident, asking whether Young had a jacket, a red bandanna, and a red hat. Young admitted to having a jacket and a red hat, but could not "remember having a bandanna." 2 VRP at 169. The prosecutor then asked, "Is your stage name 'Little Bones'? . . . What about 'Little Flame'?" 2 VRP at 169-70. Young denied using either alias.

"[A] prosecutor engages in misconduct when making an argument that appeals to jurors' fear and repudiation of criminal groups or invokes racial, ethnic, or religious prejudice as a reason to convict." *State v. Perez-Mejia*, 134 Wn. App. 907, 916, 143 P.3d 838 (2006). The prosecutor did not argue or present a case that Young and DaGraca were part of a gang.

Young does not explain how the prosecutor's questions about his clothing[27] or aliases showed gang affiliations or prejudiced his right to a fair trial. Rather the prosecutor's inquiry about Young's clothing was relevant to support the State's evidence connecting Young and DaGraca's articles of clothing to the persons witnesses had observed committing the charged crimes. The prosecutor's questions about Young's "stage name"[28] were relevant to the veracity

---

[27] Young did not object to the prosecutor's questions about his clothes.

[28] 2 VRP at 169.

of Young's earlier testimony that he was a "music artist" and that, on the evening of the incident, he and DaGraca had been celebrating an upcoming musical performance and looking for someone to buy them alcohol. 2 VRP at 160.

Moreover, neither Young nor DaGraca objected to the evidence elicited in this line of questioning; nor did either request a curative instruction. And nothing in the record suggests that the prosecutor's questions prejudiced the jury. We find no misconduct and no prejudice in the prosecutor's asking these questions.

### 4. Ineffective assistance of counsel; testifying on own behalf

Young also asserts that he was denied effective assistance of counsel by being "forced to testify." SAG (Young) at 9. Again, the record does not support this assertion.

Young and DaGraca both testified at trial. After the defendants rested and the court completed discussions about jury instructions, Young's counsel moved for a mistrial, stating he had believed that Young had wanted to testify, but apparently had misunderstood that Young did not want to testify. The State objected because Young had never expressed a desire not to testify and Young did not speak up when his counsel called him to the witness stand. The trial court denied the motion for mistrial, noting that, before Young testified, it had held a sidebar to give defense counsel ample opportunity to decide whether Young would testify. The trial court further noted that, when defense counsel said that Young would testify, Young never corrected him, something which defense counsel was unable to explain during his later motion for a mistrial. Young fails to establish that he was forced to testify against his will or that his counsel rendered ineffective assistance in calling him to the witness stand.

Young additionally asserts that he received ineffective assistance when his counsel failed to object to various statements or evidence presented by the State. Although he references various lines in the report of proceedings, he does not explain why these statements or evidence were prejudicial. *See* RAP 10.10(c). Moreover, these assertions of error are either unfounded or cumulative with other assertions of error we have already addressed. Thus, we do not further address these asserted errors.

5. Time for trial and speedy trial rights

Young next asserts that the trial court violated his CrR 3.3 time for trial[29], Sixth Amendment, and Fourteenth Amendment rights by failing to bring him to trial in a timely manner. Again, the record does not support this assertion.

Instead, the record shows that Young was timely brought to trial as required by law. CrR 3.3 governs the time for trial in superior court criminal proceedings. CrR 3.3 provides that a defendant "shall be brought to trial" within 60 days of the defendant's commencement date, which CrR 3.3(c)(1) establishes as the arraignment date, if he or she is detained in jail, CrR 3.3(b)(1), or within 90 days of the commencement date if the defendant is not detained in jail, CrR 3.3(b)(2). The record does not reveal either defendant's arraignment date; but this is not necessary to resolve Young's asserted error.

When computing the time for trial, CrR 3.3(e)(3) excludes delay for continuances granted in the following circumstances:

---

[29] Although Young asserts a violation of his "speedy trial rights," which are constitutional, he primarily raises arguments under CrR 3.3, which are procedural "time for trial" court rules. Young (SAG) at 10.

> (1) Written Agreement. Upon written agreement of the parties . . . the court may continue the trial date to a specified date.
>
> (2) Motion by the Court or a Party. On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. The motion must be made before the time for trial has expired. The court must state on the record or in writing the reasons for the continuance. The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

CrR 3.3(f).

At the January 9, 2012 continuance hearing, Defendants requested and the trial court ordered the trial reset to February 23. Because the parties agreed to set the trial over until February 23, (1) CrR 3.3(f)(2) excluded the period between January 9 and February 23 from the new time for trial calculation; and (2) thus, at the February 23 hearing, Defendants were only 49 days into their reset time for trial period. The subsequent continuances were excluded from the time for trial period, CrR 3.3(e)(3), and the time for trial would not have expired until 30 days after the end of the last excluded period. CrR 3.3(b)(5). The record thus shows that, when Defendants' trial began on March 27, 2012, Young was timely brought to trial.

Moreover, for Young to be able to raise time for trial violations on appeal, he must have timely objected below to the trial date set by the trial court. CrR 3.3(d)(4). If a court sets a trial date outside the time for trial deadlines, CrR 3.3(d)(3) requires a defendant to object within 10 days after the court gives notice of the trial date, or the defendant loses the right to object. CrR 3.3(d)(4). The record reflects no such objection by Young. Thus, Young's assertion fails on this ground as well.

Not only has Young failed to show a CrR 3.3 time for trial violation, but he also fails to show how the trial court violated his state[30] and federal[31] constitutional speedy trial rights or how the continuances prejudiced him; thus, his Sixth Amendment claim fails. *See State v. Ollivier*, 178 Wn.2d 813, 826, 312 P.3d 1 (2013), *pet. for cert. filed*, May 7, 2014. Nor can we surmise how Young might prevail on a constitutional speedy trial violation where the law and record show that he was timely brought to trial under the applicable court rules. *See* RAP 10.10(c) ("the appellate court is not obligated to search the record in support of claims made in a defendant/appellant's statement of additional grounds for review."). Thus, Young's speedy trial challenges also fail.

### 6. Firearm sentencing enhancements

Lastly, Young asserts that the trial court erred in adding two firearm enhancements to his sentence instead of one. He contends that chapter 9.94A RCW (the Sentencing Reform Act) provides that, when sentences run concurrently, the offender should be given only one firearm sentencing enhancement if he has no prior firearm offenses. Young is incorrect.

RCW 9.94A.533(3)[32], which governs firearm sentencing enhancements, provides in part:

> The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm . . . and the offender is being sentenced [for a crime eligible for firearm enhancements]. If the offender is being sentenced for more than one offense, the firearm . . . enhancements must be added to the total period of

---

[30] WASH. CONST. art I, § 22.

[31] U.S. CONST. amend. VI.

[32] The legislature amended RCW 9.94A.533 numerous times since 2011. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

confinement for all offenses. [T]he following additional times shall be added to the standard sentence range . . . :

> (a) Five years for any felony defined under any law as a class A felony . . . .;
>
> . . . .
>
> (e) Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements.

The jury convicted Young of first degree robbery, first degree kidnapping (both Class A felonies), and first degree unlawful possession of a firearm (a Class B felony). *See* RCW 9A.56.200(2), 9A.40.020(2), 9.41.040(1)(b)[33]. By special verdict form, the jury also found that Young had committed both the robbery and kidnapping while armed with a firearm, thus subjecting him to firearm sentencing enhancements under RCW 9.94A.533(3). The trial court imposed (1) standard low end sentences for count I, first degree robbery (87 months) and for count II, first degree kidnapping (110 months), both Class A felonies; and (2) a standard high end sentence for count III, unlawful possession of a firearm (54 months), a Class B felony. Because both counts I and II were Class A felonies, RCW 9.94A.533(3)(a) required the trial

---

[33] The legislature amended RCW 9.41.040 in 2014, LAWS OF 2014, ch. 111, §1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

court to sentence Young to an additional 60-month firearm enhancement for each of these two counts, to run consecutively. The trial court did not err in adding firearm enhancements to each of Young's Class A felony standard range sentences.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Bjorgen, A.C.J.

Maxa, J.