# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50291-7-II |
| Respondent, | |
| v. | |
| SAMUAL JAMES MCHERRON, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Samuel James McHerron, Jr. appeals his jury conviction for felony harassment of a criminal justice participant. McHerron argues that the State failed to present sufficient evidence to show that a reasonable criminal justice participant would have believed that McHerron was capable of carrying out his threat. We affirm.

## FACTS

On the afternoon of June 22, 2016, Deputy Derrick Nielsen of the Pierce County Transit Police was on patrol at a Pierce County transit center. As Deputy Nielsen pulled his patrol vehicle into the transit center, he heard a female voice screaming, "Help me. Help me. He's hitting me. Get away from me." 3 Verbatim Report of Proceedings (VRP) (Jan. 23, 2017) at 174.

Deputy Nielsen exited his vehicle and followed the continued screams to a nearby street corner. There, he saw a man later identified as McHerron grabbing and pulling on a woman's arm. The woman was later identified as McHerron's wife, Kristina McHerron.[1]

Deputy Nielsen approached the couple and identified himself as a police officer. Deputy Nielsen ordered McHerron and Kristina to separate and back away from one another. He then ordered McHerron to sit on a nearby curb. In response, McHerron began to scream at Deputy Nielsen. McHerron told Deputy Nielsen to "f*** off" and asked, "what are you going to do, shoot me." 3 VRP (Jan. 23, 2017) at 186. McHerron told Deputy Nielsen "to get the f*** away" and refused to sit on the curb. 3 VRP (Jan. 23, 2017) at 186.

Fearing that McHerron would assault him or Kristina, Deputy Nielsen contacted dispatch for backup. As he waited for additional officers to arrive, Deputy Nielsen placed himself between McHerron and Kristina. McHerron continued to tell Deputy Nielsen to "f*** off, get the h*** out of there, and repeatedly screamed, 'What are you going to do, shoot me'?" 3 VRP (Jan. 23, 2017) at 188.

According to Deputy Nielsen, McHerron tried to physically contact Kristina at least three times. At one point, McHerron stepped toward Kristina, prompting Deputy Nielsen to use his hand and push McHerron on his chest. This forced McHerron to take two to three steps backward. In response, McHerron took off his backpack, jacket, and shirt. McHerron then turned towards Deputy Nielsen, assumed a fighter's stance, and balled up his fists. Once he assumed this stance,

---

[1] Because multiple individuals in this case share the last name McHerron, we refer to the appellant by his last name and all other individuals with the last name McHerron by their first name. We intend no disrespect.

McHerron told Deputy Nielsen that he was "going to kick [Deputy Nielsen's] a\*\*." 3 VRP (Jan. 23, 2017) at 191.

Deputy Nielsen feared that an assault was imminent. According to Deputy Nielsen, he believed McHerron was capable of carrying out his threat because McHerron was approximately the same height, weight, and age as Deputy Nielsen. Deputy Nielsen also observed that McHerron appeared to be physically fit with above average muscle mass.

Deputy Nielsen decided to take physical custody of McHerron. He took out his Taser[2] and deployed the weapon from approximately 10 feet away. McHerron turned his back toward Deputy Nielsen, and as a result, the Taser darts made contact with McHerron's back. McHerron responded by looking over his shoulder and saying, "Is that all you f\*\*\*\*\*\* got?" 3 VRP (Jan. 23, 2017) at 197. Deputy Nielsen dropped his Taser, approached McHerron, and employed a neck restraint in order to take McHerron to the ground. Moments later, the dispatched officers arrived and helped take McHerron into custody.

---

[2] The Taser is a law enforcement tool that allows officers to subdue a suspect using electricity, rather than blunt force trauma. David Martin, *Taser: An Officer's Weapon of Choice*, CBS NEWS (Nov. 13, 2011), https://www.cbsnews.com/news/taser-an-officers-weapon-of-choice/. When activated, the Taser gun shoots two electrified darts, attached to copper wires. David Martin, *Taser: An Officer's Weapon of Choice*, CBS NEWS (Nov. 13, 2011), https://www.cbsnews.com/news/taser-an-officers-weapon-of-choice/. Once these darts pierce the target's skin, they flood the body with electrical current, causing uncontrollable muscle spasms. Bruce Weber, *Jack Cover, 88, Physicist Who Invented the Taser Stun Gun, Dies*, N.Y. TIMES, Feb. 16, 2009, at A16.

McHerron was charged with felony harassment[3] for knowingly threatening a criminal justice participant in the performance of his or her duties.[4] At trial, Deputy Nielsen testified to the facts discussed above. Deputy Nielsen also testified that during his interaction with McHerron, he feared for both his and Kristina's safety. Deputy Nielsen stated that he deployed his Taser because McHerron had assumed a fighter's stance with his fists balled up and continued to threaten Deputy Nielsen. Deputy Nielsen further testified that McHerron was unarmed at the time. Deputy Nielsen, on the other hand, was armed with his Taser, a firearm, and pepper spray.

McHerron also testified at trial. McHerron testified that he did not say the things Deputy Nielsen testified to. McHerron also testified that he asked Deputy Nielsen if he wanted to fight.

The jury found McHerron guilty of felony harassment for knowingly threatening a criminal justice participant in the course of his or her official duties. McHerron appeals.

ANALYSIS

McHerron contends that the State presented insufficient evidence to prove beyond a reasonable doubt that a reasonable criminal justice participant in Deputy Nielsen's position would have feared that McHerron could carry out his threat. We disagree.

1.      Standard of Review

We review a challenge to the sufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). The test for determining whether sufficient evidence supports a

---

[3] RCW 9A.46.020(1)(a), (2)(b).

[4] McHerron was also charged with, and convicted of, one count fourth degree assault and one count of resisting arrest. McHerron does not assign error to his fourth degree assault and resisting arrest convictions on appeal.

conviction is whether, after viewing the evidence in the light most favorable to the State, any rational fact finder could have found the essential elements of the crime charged beyond a reasonable doubt. *Id.* In making a sufficiency challenge, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

2. The Evidence was Sufficient

A person commits harassment by threat of bodily injury if that person "[w]ithout lawful authority . . . knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened or to any other person" and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(a)(i), (b). Harassment is a class C felony if the speaker "harasses a criminal justice participant who is performing his or her official duties at the time the threat is made" or harasses a criminal justice participant because of an action taken by the criminal justice participant during the course of his or her duties. RCW 9A.46.020(2)(b)(iii), (iv).

To protect against unconstitutional infringement on free speech, RCW 9A.46.020 must be read to clearly prohibit only "true threats." *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). A "true threat" is a statement that is made in a context or under such circumstances where a reasonable person would foresee that the statement would be interpreted as a serious expression

5

of intention to inflict bodily harm on another person. *Id.* The statement must be "a serious threat, not one said in jest, idle talk, or political argument." *Id.*

When the threat involves a criminal justice participant:

[T]he fear from the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances. Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat.

RCW 9A.46.020(2)(b).

McHerron argues that a reasonable criminal justice participant in Deputy Nielsen's position would not have feared that McHerron, an unarmed, shirtless civilian, would carry out his threat to cause Deputy Nielsen physical harm. However, the record shows that McHerron repeatedly screamed profanities toward Deputy Nielsen and refused to obey Deputy Nielsen's orders. After Deputy Nielsen pushed McHerron away, McHerron responded by taking off his backpack, jacket, and shirt. McHerron then turned towards Deputy Nielsen, assumed a fighter's stance, balled his fists, and told Deputy Nielsen that he was "going to kick [Deputy Nielsen's] a\*\*." 3 VRP (Jan. 23, 2017) at 191. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found that a reasonable officer in Deputy Nielsen's position would have feared that McHerron's threat was a serious expression of intent to inflict bodily harm. *Kilburn*, 151 Wn.2d at 43.

McHerron also argues that insufficient evidence supported his conviction because Deputy Nielsen's fear that McHerron was capable of carrying out his threat was not reasonable. Specifically, McHerron argues that no reasonable criminal justice participant in Deputy Nielsen's

position would have believed that a shirtless, unarmed civilian had the present and future ability to carry out his threat.

In making this argument, McHerron misinterprets the last sentence in RCW 9A.46.020(2)(b), which states, "Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat."  McHerron appears to argue that based on this language, the State was required to prove that a reasonable criminal justice participant in Deputy Nielsen's position would have believed McHerron was capable of carrying out his threat.  But RCW 9A.46.020(2)(b) does not impose the requirement that a "reasonable criminal justice participant" perceive that the speaker had a present or future ability to carry out the threat.  *State v. Boyle*, 183 Wn. App. 1, 11, 335 P.3d 954 (2014), *review denied* 184 Wn.2d 1002 (2015).  Rather, statements made to a criminal justice participant constitute felony harassment if it was apparent to the participant—not a reasonable participant—that the speaker had either the present or future ability to carry out his threat. *Id.*

Here, Deputy Nielsen testified that based on McHerron's age, height, and physical build, he believed McHerron was capable of carrying out his threat.  Indeed, even Deputy Nielsen's Taser failed to physically subdue McHerron.  Therefore, it was apparent to Deputy Nielsen that McHerron was presently capable of carrying out his threat.

No. 50291-7-II

We hold that sufficient evidence supports McHerron's conviction for felony harassment of a criminal justice participant. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa C.J.

Melnick J.

8