# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, Respondent, v. SHANE MATHEW BROWN, Appellant. | No. 80943-1-I DIVISION ONE UNPUBLISHED OPINION |

APPELWICK, J. — Brown appeals from a judgment and sentence for interfering with domestic violence reporting and violation of a no-contact order. First, he argues he was denied his right to a unanimous jury. Next, he argues the court admitted out-of-court statements in violation of his right to confront his accuser. Further, he argues the court erred in imposing no-contact orders for his children. Finally, he argues the order of restitution should be vacated. We remand for reconsideration of the no-contact orders, and otherwise affirm.

## FACTS

Paula Goebel and Shane Brown have two minor children together. On March 2, 2019, Goebel called the 911 emergency system. Goebel told the operator, "He keeps following me!" and "Help me!" On the call recording, a male voice can be heard saying, "Give me the phone."

Responding officers found Goebel and her two children on the sidewalk. She told police that before fleeing, Brown followed her, pushed her and her child down, threatened to kill her, and stole her phone. She let them know there was an

existing no-contact order between her and Brown. Later, medics arrived to treat Goebel.

Police located Brown a quarter mile away. They handcuffed and searched him, recovering one phone.

Brown was charged with interfering with the reporting of a crime of domestic violence, robbery in the second degree, and felony violation of a no-contact order. At trial, he testified that he was riding the bus that day when he was approached by his children, and that an argument occurred between him and Goebel. He exited the bus, returning to the bus stop 20 to 30 minutes later. There, he saw his family on a bench and claimed Goebel asked to borrow his phone. When he heard her stating her location and that he was "offending her," he began telling her to give him the phone. He said Goebel threw his phone to the ground, which he retrieved before running away. He denied assaulting Goebel.

Goebel did not testify at trial. The court allowed her out-of-court statements to be admitted via police body-worn camera footage and a recording of the 911 emergency service system call.

The jury acquitted Brown of robbery in the second degree, but found him guilty of the other two charges. The court imposed no-contact orders for his children. Following a restitution hearing, it also ordered him to pay Goebel restitution for her lost cell phone.

Brown appeals.

DISCUSSION

First, Brown argues he was denied his right to a unanimous jury. Next, he argues the court admitted the victim's statements in violation of his right to confront his accuser. Third, he argues the court erred in imposing no-contact orders barring him from any contact with his minor children for five years. Finally, he argues the order of restitution should be vacated because it was unsupported by substantial credible evidence.

I. Unanimous Jury

Brown argues the conviction for interfering with domestic violence reporting violated his right to a unanimous jury. He argues substantial evidence did not support each of the means of accomplishing the offense.

Criminal defendants have the right to a unanimous jury verdict. WASH. CONST. art. I, § 21; State v. Sandholm, 184 Wn.2d 726, 732, 364 P.3d 87 (2015). In alternative means cases, where the criminal offense can be committed in more than one way, an expression of jury unanimity is not required provided each alternative means presented to the jury is supported by sufficient evidence. Id. But, when insufficient evidence supports one or more of the alternative means presented to the jury, the conviction will not be affirmed. Id. We review the sufficiency of the evidence de novo. State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014).

Interfering with the reporting of a crime of domestic violence is an alternate means crime. See State v. Nonog, 145 Wn. App. 802, 812-13, 187 P.3d 335 (2008), aff'd, 169 Wn.2d 220, 237 P.3d 250 (2010). A person may interfere with

domestic violence reporting by committing a crime of domestic violence, and preventing or attempting to prevent the victim from: (1) calling a 911 emergency communication system, (2) obtaining medical assistance, or (3) making a report to any law enforcement official. RCW 9A.36.150(a), (b). The jury was instructed on all three means, so each must be supported by substantial evidence.

Brown argues the evidence did not support the alternative means of "calling a 911 emergency communication system" or "obtaining medical assistance." RCW 9A.36.150(b). He notes that Goebel successfully called 911. But, this is irrelevant, attempt alone is criminalized under the statute. Id. The statute does not distinguish between placing a call to 911 and continuing to carry on the communication that was the purpose of that call. Id. And, the call evidenced Brown's interference. On the call, scuffling could be heard, as well as Goebel saying, "'Leave me alone'" and "'[S]top following me.'" At trial, Brown admitted he was the voice at the beginning of the call saying, "'Give me the phone'" to Goebel. He testified that, at least initially, she would not give him the phone. He testified to hearing her on the phone relaying her location and that he was offending her. The jury also heard statements from Goebel to police that Brown took the phone and ran away. There was sufficient evidence for it to conclude Brown prevented or attempted to prevent her from calling 911.

Next, Brown contends Goebel did not attempt to obtain medical assistance because she did not report her injuries or directly request medical assistance to the 911 operator. The interference statute contains no such requirement that the communication be completed. See id. This is not surprising since the interference

4

or attempted interference with the communication with 911 may prevent the victim from doing so.

When officers contacted Goebel, they noted she was crying. The jury heard Officer Todd Olson describe Goebel holding her hand as he approached. It was able to observe this on police bodycam footage. It heard Goebel's statements that Brown had knocked her to the ground, causing injury. It heard Officer Michael Drazio describe admitted photographs of injuries to Goebel's right knee from being thrown to the ground. The jury was entitled to infer from the evidence that Goebel was prevented from communicating the injury and a request for medical assistance. This evidence was sufficient to support Brown's conviction for interference by preventing or attempting to prevent a victim from seeking medical assistance.

We hold that Brown's right to a unanimous jury was not violated.

II. Confrontation Clause

Next, Brown argues admitting Goebel's out-of-court statements to police violated his right to confront his accuser.

The constitutional right of an accused person to confront witnesses against them bars the use of out-of-court statements as a substitute for live testimony. Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); U.S. CONST. amend. VI; CONST. art. I, § 22. The confrontation clause forbids the use of "testimonial" out-of-court statements at trial unless the defendant had the opportunity to confront the person who made the statement, and that person is unavailable to testify. See Crawford, 541 U.S. at 68. We review

5

confrontation clause violation claims de novo. State v. Koslowski, 166 Wn.2d 409, 417, 209 P.3d 479 (2009).

Statements are nontestimonial when made in the course of a police interrogation under circumstances objectively indicating the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

"In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" Ohio v. Clark, 576 U.S. 237, 245, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015) (alteration in original) (quoting Michigan v. Bryant, 562 U.S. 344, 358, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011)).

Here, Goebel did not testify at trial. The court admitted Goebel's statements to police via body-worn camera footage. It excluded everything beyond the point when officers started checking on the no-contact order and Goebel's medical condition, stating the inquiry transitioned from being nontestimonial and the emergency began to dissipate.

Brown argues Goebel's statements to police at the scene that were admitted were testimonial. He argues they were conducted after the incident had ended and no ongoing emergency existed.

Upon arrival, officers ask Goebel, "What's going on?" In her 911 call, Goebel had not communicated Brown's criminal history or what threat level he posed. Brown was still at large. Police did not know Brown's identity, if he would arrive again on the scene, or what they would encounter if they located him. Their

6

questions largely centered on identifying the assailant, such as his name and birthdate. Police were then able to run this information through their database to ascertain "whether they would be encountering a violent felon." Davis, 547 U.S. at 827-28 (holding a 911 operator's effort to identify an assailant was necessary to enable responding officers to meet an ongoing emergency).

In Bryant, where police arrived on the scene of a shooting by an unknown suspect, questions about "what had happened" were held to be necessary to allow the police to "'assess the situation, the threat to their own safety, and possible danger to the potential victim.'" Bryant, 562 U.S. at 376 (quoting Davis, 547 U.S., at 832).

Viewed objectively, the primary purpose of police questioning in the beginning of the contact was to meet an ongoing emergency. The admittance of Goebel's statements did not violate Brown's Sixth Amendment right to confront his accuser.

III. No-Contact Orders

Brown asserts the trial court erred by imposing no-contact orders for his children without analyzing on the record the need for such orders and considering less restrictive alternatives.

This court reviews the imposition of sentencing conditions for an abuse of discretion. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). Applying the wrong legal standard is an abuse of discretion. State v. Lord, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007).

Parents have a fundamental liberty interest in the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Sentencing conditions that interfere with fundamental rights must be reasonably necessary to achieve a compelling state interest. State v. Ancira, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001). The State concedes that the trial court did not apply the correct legal standard in issuing the no-contact orders. Its concession is well taken.

We remand to the sentencing court for reconsideration of the terms of the no-contact orders.

IV. Restitution

Finally, Brown argues the order of restitution was not supported by substantial, credible evidence. The order of restitution shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. RCW 9.94A.753(3). Trial courts are granted broad powers of restitution by the legislature. State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). Restitution is permitted for losses that are causally connected to the crime. State v. Griffith, 164 Wn.2d 960, 965-66, 195 P.3d 506 (2008). Generally, losses are causally connected if, but for the charged crime, the victim would not have incurred the loss. Id. at 966. Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. State v. Fleming, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct.

8

2546, 165 L. Ed. 2d 466 (2006). A trial court's restitution order will not be disturbed on appeal absent an abuse of discretion. State v. Deskins, 180 Wn.2d 68, 77, 322 P.3d 780 (2014).

The court ordered Brown to pay restitution to Goebel in the amount of $132.59 for her cell phone. In its order, the court,

> noted the [d]efendant's objection, i.e.[,] that the jury acquitted the [d]efendant of the property-related offense in Count 1 (Robbery). However, the [c]ourt overruled the objection and concluded that based on the evidence presented at trial, there was a causal connection between the [d]efendant's conduct and the disappearance of the victim's cell phone.

That the jury acquitted Brown of robbery does not foreclose the possibility that there was a causal connection between the loss of Goebel's phone and the crimes for which Brown was convicted. The jury instructions for robbery required it to find not only that Brown took Goebel's phone, but that he took it "against her will with use or threatened use of immediate force, violence, or fear of injury." Regardless of the jury's reasons for acquittal on robbery, the relevant question is whether sufficient evidence demonstrated that but for Brown's crimes of conviction, Goebel would not have incurred the loss of her phone. See Griffith, 164 Wn.2d at 966.

The 911 call is evidence she was in possession of a phone. In her victim impact statement, Goebel said that he "stole [her] phone and ran off." This matched her statements on police video admitted at trial that Goebel had taken her phone. The jury verdict necessarily supports that he interfered with the call.

9

There was sufficient evidence to conclude that Goebel's phone was gone as a result of Brown's interference.

The amount of restitution was also reasonably inferred from the evidence. Goebel signed a victim loss statement indicating her "LG G Stylo-8 GB (Boost Mobile)" cell phone was still unrecovered property. The restitution amount came from the State's documentation from an online retailer showing the same phone model valued at $194.99 and offered for a sale price of $132.59. The court did not abuse its discretion in awarding restitution for the loss of Goebel's phone.

We remand for reconsideration of the no-contact orders, and otherwise affirm.

_Appelwick, J._

WE CONCUR:

_Smith, J._       _Mann, C.J._