IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82519-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESSY BENJAMIN RYLAH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Jessy Rylah challenges his conviction for unlawful imprisonment arguing that the State failed to present sufficient evidence to establish that Rylah "knowingly" restrained E.H. But because Rylah had information that would lead a reasonable person in the same situation to believe that E.H. was in the vehicle he stole, a rational trier of fact could have found that the State proved the essential elements of unlawful imprisonment beyond a reasonable doubt.

Therefore, we affirm.

FACTS

On January 28, 2020, Elsa Fox, a bus driver for the Sultan County school district, dropped nine-year-old E.H. off at the Skylight Tracts bus stop. That day, E.H. and her two friends, M. and A., were getting a ride home from M.'s grandmother, Conie Christie.

Sara Host, a parent at the bus stop, was walking with her children toward her vehicle when she saw Jessy Rylah run past her. Host saw Rylah attempt to break

into another parent's vehicle. Rylah then ran to the next vehicle in the parking lot, the vehicle Christie was driving.

When Rylah approached Christie's vehicle, Christie was in the driver's seat and her back was against the driver's side door, E.H. was in the middle of the back seat, and A. was in the seat next to E.H., behind the front passenger seat. As M. entered the car, Rylah pulled Christie out of the vehicle and threw her to the ground. Janella Steele, another parent at the bus stop, witnessed Christie getting pulled from her vehicle and attempted to stop Rylah by slapping his hands and repeatedly shouting "no," while trying to stop Christie from falling.

Christie and the other parents yelled at the children to get out of the vehicle. But E.H. was unable to exit the vehicle. Rylah drove away from the bus stop at a "faster" than normal speed with E.H. in the vehicle.[1] After one to three minutes, he ordered E.H. "to get out" of the vehicle.[2] She struggled to exit the vehicle because the door was locked, but on her third attempt, she managed to escape. Seconds later, Fox saw E.H. on the side of the road, picked her up, finished her route, and drove E.H. back to the bus stop.

Around the same time, Rylah drove Christie's vehicle to a nearby residential neighborhood, parked the vehicle, and entered a different vehicle that was parked in the driveway of a residence. The homeowner contacted a patrol deputy, who worked with another deputy to take Rylah into custody.

---

[1] Report of Proceedings (RP) (Mar. 10, 2021) at 343.

[2] Id. at 344.

The jury convicted Rylah of first degree robbery, unlawful imprisonment, and two counts of attempted theft of a motor vehicle.

Rylah appeals his unlawful imprisonment conviction.

ANALYSIS

Rylah argues that there was insufficient evidence for any rational juror to conclude beyond a reasonable doubt that he "knowingly" restrained E.H.

Whether there is sufficient evidence to support a criminal conviction is a question of law we review de novo.[3] In determining whether there is sufficient evidence to support a conviction, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[4]

When a defendant challenges the sufficiency of the evidence, we construe all reasonable inferences from the evidence in the State's favor and interpret that evidence "'most strongly against the defendant.'"[5] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[6] "'Circumstantial evidence and direct evidence are equally reliable in

---

[3] State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016) (citing State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014)).

[4] State v. Scanlan, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (internal quotation marks omitted) (quoting State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

[5] Id. (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

[6] Id. (internal quotation marks omitted) (quoting Salinas, 119 Wn.2d at 201).

determining the sufficiency of the evidence.'"[7] But "'inferences based on circumstantial evidence must be reasonable and cannot be based on speculation.'"[8]

RCW 9A.40.040(1) provides, "A person is guilty of unlawful imprisonment if he or she knowingly restrains another person."[9]

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. . . . [But if] a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.[10]

Here, Christie testified that she was in her vehicle with her back against the driver's side door when E.H. and A. entered the backseat of the vehicle. She stated that M. was on her "way in[to] the car" when Rylah "grabbed [Christie] and [threw]" her from the vehicle.[11] She testified that she "was screaming at the girls, [to] get out of the car."[12] Christie stated that as Rylah began to drive "down the road," she continued to scream at the girls "to get out of the car."[13]

E.H. testified that she tried "to get out of the car" but "couldn't make it out."[14] She stated that Rylah began driving the vehicle at a "faster" than normal speed for

---

[7] Id. at 770-71 (internal quotation marks omitted) (quoting State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010)).

[8] Id. (quoting State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)).

[9] RCW 9A.40.040(1).

[10] Clerk's Papers at 66.

[11] RP (Mar. 10, 2021) at 306-07.

[12] Id. at 306.

[13] Id. at 308.

[14] Id. at 342.

"one or two, maybe three minutes" before he told her to "get out of the vehicle" three times.[15] She testified that she could not "get out" the first and second time Rylah ordered her to "[b]ecause the door was locked . . . and [she] didn't notice [the lock] until the third time he told [her]."[16]

Horst testified that E.H. was in the back seat of Christie's vehicle and that when Rylah "reached his arm in and hooked [Christie's] arm" to pull "her out of the vehicle," Christie started screaming at the girls to get out of the car.[17]

Shablee Tuttle, another parent waiting at the bus stop, testified that "[a]fter [Christie] was on the ground, we started, me and a few other parents, the ones that were at the bus stop, started screaming to get the kids that were in the backseat out, we started screaming at them to get out of the car."[18] Tuttle also testified that she recognized Rylah and began screaming his name in an attempt to get his attention. She stated that "he looked at [her] in the face, and just drove off."[19]

Steele stated that she "swatt[ed] his hands" and said "no, no, no" when Rylah "grabbed" Christie.[20] She stated that "parents were yelling" and "everybody was screaming about it, because there was still a kid in the car."[21]

---

[15] Id. at 343-44.

[16] Id. at 344.

[17] Id. at 367.

[18] Id. at 407-08.

[19] Id. at 410.

[20] Id. at 466.

[21] Id. at 467-68.

Fox testified that she saw E.H. on the side of the road about three to four minutes after she dropped E.H. off at the bus stop.

Viewing the evidence in the light most favorable to the State, any rational trier of fact could have reasonably inferred that Rylah had sufficient information to believe that E.H. remained in the vehicle when he was in close proximity to parents and children at the bus stop, parents were screaming at the girls to get out of the vehicle, he drove for one to three minutes with E.H. in the vehicle, and when he ordered E.H. out of the vehicle, he did not unlock the door, even after she tried repeatedly to get out of the vehicle and failed.

Based upon the State's evidence, any rational trier of fact could conclude that a reasonable person in Rylah's same situation would have sufficient information to "know" that E.H. remained in the vehicle. The State presented sufficient evidence to establish the essential elements of unlawful imprisonment beyond a reasonable doubt.

Therefore, we affirm.

_____

WE CONCUR:

_____     _____
Appelwick, J.